## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHARAE A. BROWN** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Action No.: 1:13-cv-03258-RDB** |
| **v.** | * | |
| | * | |
| **JOHNS HOPKINS HOSPITAL** | * | |
| | * | |
| **Defendant.** | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant The Johns Hopkins Hospital ("JHH"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 105, submits the following Memorandum of Law in Support of its Motion to Dismiss.

Respectfully Submitted,

_____/s/_____

John M. Gilman
Fed. Bar. No. 27358
Jgilman6@jhmi.edu
The Johns Hopkins Health System Legal Department
5801 Smith Avenue
McAuley Hall, Suite 310
Baltimore, MD 21209
P 410-735-6662
F 410-735-6525
**Attorneys for Defendant The Johns Hopkins Hospital**

# TABLE OF CONTENTS

I.      Introduction…………………………………………………………………………..1

II.     Facts………………………………………………………………………………….2

III.    Standard of Review…………………………………………………………………..6

IV.     Argument……………………………………………………………………………7

   A.   Plaintiff has not and cannot plead actionable claims under Title VII…………………..…7

      1.   Plaintiff cannot rely on untimely allegations to support her claims for violations of Title VII………………………………………………………………………………..7

         a. Plaintiff's Title VII claims cannot proceed based on her untimely allegations in ¶¶ 8-10 in her Amended Complaint………………………………………………....7

         b. Plaintiff cannot rely on the continuing violation doctrine to revive her untimely allegations in ¶¶ 8-10 in her Amended Complaint………………………….…......7

      2.   Plaintiff's claim for retaliation in violation of Title VII fails to state a claim upon which relief can be granted…………………………………………………………..8

         a. In November 2010, Plaintiff reported to Mr. Nguyen two instances in which she claimed Mr. Salazar confronted her.  Am. Compl. ¶¶ 12, 23………………………...9

            i.   Plaintiff did not engage in protected activity………………………………….9

            ii.  Plaintiff did not suffer an adverse employment action………………………10

         b. On January 3, 2011, Plaintiff contacted human resources manager Doris Pendergrass to complain that her race and gender were the reasons why Mr. Nguyen denied her training and Mr. Salazar confronted her.  Am. Compl. ¶¶ 13, 22…………………………………………………………………………11

            i.   Plaintiff did not suffer an adverse employment action…………………………11

            ii.  Plaintiff cannot show the required causal link………………………………...12

         c. On February 3, 2011, Plaintiff indicated that she intended to file, and on February 15, 2011 did file, an EEOC Charge of Discrimination.  Am. Compl. ¶¶ 15, 16………………………………………………………………………...13

            i.   Plaintiff cannot show the required causal link…………………………………13

            ii.  Plaintiff did not suffer an adverse employment action after filing her EEOC Charge…………………………………………………………………………14

            iii. Plaintiff cannot show the required causal link based on conduct after she filed her EEOC Charge…………………………….........................................15

      3.   Plaintiff's claims for sex, race and gender discrimination in violation of Title VII fail to state claims upon which relief can be granted………………………………………16

         a. Plaintiff's causes of action for gender (Count Two) and race (Count Three) discrimination fail to allege the necessary elements for actionable claims…………………………………………………………………………...17

        i.    Plaintiff has not shown similarly situated employees were treated more favorably…………………………………………………………………………..17

        ii.   Plaintiff did not suffer an adverse employment action…………………………19

    b. Plaintiff's claim for sex discrimination (Count Six) is not actionable because Plaintiff has not alleged a claim different from those contained elsewhere in her Amended Complaint………………………………………………………………..20

  4.  Plaintiff's claims for gender and race harassment in violation of Title VII fail to state claims upon which relief can be granted……………………………………………21

    a. Plaintiff has not shown unwelcome conduct based on her protected classifications……………………………………………………........................21

    b. Plaintiff has not pled severe or pervasive conduct…………………………….23

B.   Count Seven does not state an actionable claim for negligent hiring, supervision, and retention…………………………………………………………………………………24

  1.  Plaintiff has not alleged sufficient facts to survive a motion to dismiss for failure to state a claim…………………………………………………………………………24

    a. Plaintiff has failed to plead sufficient facts to state an actionable claim………..25

    b. Plaintiff has failed to show the required element of causation………………...25

  2.  Maryland's statutory remedies for on the job injuries preempts Plaintiff's negligence claim…………………………………………………………........................................26

C.   Plaintiff cannot and has not stated a claim for relief under the FMLA…………………………28

  1.  Plaintiff has not and cannot state a claim for interference with FMLA rights……………………………………………………………………………..28

  2.  Plaintiff cannot state a claim for retaliation under the FMLA…………..……………30

  3.  The statute of limitations bars Plaintiff's claims for violations of the FMLA…………………………………………………………………………..32

    a. Plaintiff has not and cannot show a willful FMLA violation……………………33

    b. JHH's requirement that Plaintiff execute its Disclosure form does not show a willful FMLA violation……………………………………………………...35

V.    Conclusion…………………………………………………………………………36

# I.    INTRODUCTION

Plaintiff Sharae A. Brown filed her Complaint on September 9, 2013 in the Circuit Court of Maryland for Baltimore City[1] alleging violations of law relating to her employment.  In response to a motion to dismiss her claims, Plaintiff filed an Amended Complaint[2] on November 20, 2013.

In her Amended Complaint, Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII") claiming retaliation (Count One); disparate treatment for gender discrimination (Count Two), race discrimination (Count Three), sex discrimination (Count Six); harassment because of her gender (Count Four) and race (Count Five); a common law claim for negligent hiring, supervision, and retention (Count Seven); unlawful interference with medical leave in violation of 29 U.S.C. § 2601 *et seq.* (the "FMLA") (Count Eight); and retaliation in Violation of the FMLA (Count Nine).

Plaintiff's Amended Complaint fails to state any claim upon which relief can be granted because:

- Plaintiff cannot rely on untimely allegations to support her claims for violations of Title VII;

- Plaintiff's claim for retaliation fails to contain sufficient factual details stating the necessary elements of protected activity, adverse action, and causation;

- Plaintiff's claims for gender and race discrimination fail because Plaintiff has not alleged an adverse action or that other similarly situated employees outside her protected classification received more favorable treatment;

- Plaintiff's claim for sex discrimination is duplicative of her other claims and fails for the same reasons the other claims fail;

---

[1] JHH timely removed the case to this Court based on federal question jurisdiction under 28 U.S.C. § 1331.

[2] JHH's pending Motion became moot when Plaintiff filed her Amended Complaint.  Plaintiff agrees with this assertion.  *See* ECF Doc. #13-1, Plaintiff's Opposition to Defendant's Motion to Dismiss at page 1.

- Plaintiff's claims for gender harassment and race harassment do not allege conduct that was based on gender or race and that were severe or pervasive;

- Plaintiff has failed to plead sufficient facts to state an actionable claim for negligent hiring, supervision, and retention, and even if she could, Maryland's Workers' Compensation Act preempts Plaintiff's negligence claim; and

- Plaintiff cannot state a claim for interference or retaliation under the FMLA, and even if she could, the statute of limitations bars Plaintiff's FMLA claims.

Consequently, even taking as true Plaintiff's allegations, which the Court must on a motion to dismiss, the Court should grant JHH's Motion and dismiss all of Plaintiff's claims.

## II.     FACTS[3]

JHH hired Plaintiff as a part-time Lab Technician I in the pathology department on or about September 15, 2008.  Am. Compl. ¶¶ 2, 7.  Plaintiff's first-line supervisor was Keith Nguyen.  Am. Compl. ¶ 7.  Plaintiff's second-line supervisor was Lydia Nelson, the manager for the pathology department.  Am. Compl. ¶ 7.

In June 2009, Mr. Nguyen reprimanded Plaintiff in connection with a lost lab specimen. Am. Compl. ¶ 8.  In July 2009, Plaintiff sought promotion to full time status.  Am. Compl. ¶ 9. Mr. Nguyen told Plaintiff that he would promote her.  Am. Compl. ¶ 9.  In September 2009, Plaintiff received a "highly proficient" rating for her annual performance review.  Am. Compl. ¶ 8.  In February of 2010, Plaintiff received a promotion to full time status.  Am. Compl. ¶ 9.

In January 2010, Plaintiff complained to Ms. Nelson that Mr. Nguyen discriminated against her because of her race and gender and in retaliation.  Am. Compl. ¶ 9.  In or around February of 2010, Mr. Nguyen issued Plaintiff discipline after Allan Salazar, a medical technician, complained about Plaintiff's conduct.  Am. Compl. ¶ 10.  Mr. Nguyen reprimanded Plaintiff in the presence of her co-workers for engaging in rude or discourteous behavior.  Am.

---

[3] Solely for the purposes of this Motion, JHH accepts the factual allegations (but not the legal conclusions) of the Amended Complaint.

Compl. ¶ 10.  Plaintiff was humiliated and embarrassed.  Am. Compl. ¶ 10.  Plaintiff reported Mr. Nguyen's actions to Ms. Nelson.  Am. Compl. ¶ 10.

After receiving discipline, Plaintiff asked Mr. Nguyen to provide her training and promote her to the Lab Technician II position.  Am. Compl. ¶ 11.  Mr. Nguyen denied Plaintiff training and promotional opportunities for the Lab Technician II position.  Am. Compl. ¶ 11. After obtaining certification as a phlebotomist in November 2010, Plaintiff requested training. Am. Compl. ¶ 11.  Mr. Nguyen did not provide Plaintiff training or a promotion.  Am. Compl. ¶ 11.  In November 2010, Mr. Nguyen hired a male Hispanic as a full-time lab technician.  Am. Compl. ¶ 9.

On or about November 24, 2010, Mr. Salazar and Plaintiff had an altercation during which Mr. Salazar stated to Plaintiff, "You need to learn your manners."  Am. Compl. ¶ 12. Later that day, Mr. Salazar called Plaintiff a "fucker."  Am. Compl. ¶ 12.  Plaintiff reported the events to Mr. Nguyen.  Am. Compl. ¶ 12.  Mr. Nguyen told Plaintiff he would address the issue. Am. Compl. ¶ 12.

A couple days later, Mr. Salazar blocked Plaintiff's entry to a celebratory event and told Plaintiff, "This is not for everyone."  Am. Compl. ¶ 12.  Mr. Salazar eventually moved to allow Plaintiff entry into the room.  Am. Compl. ¶ 12.  Plaintiff said, "thank you" to Mr. Salazar and he responded, "Shut up shit head."  Am. Compl. ¶ 12.  Plaintiff reported the event to Mr. Nguyen. Am. Compl. ¶ 12.  Mr. Nguyen told Plaintiff he would address the issue.  Am. Compl. ¶ 12. Plaintiff wanted Mr. Nguyen to address the matter because she feared that Mr. Salazar was becoming more violent and hostile towards her.  Am. Compl. ¶ 12.  Mr. Nguyen did not have further meetings with Plaintiff and did not discipline Mr. Salazar in front of Plaintiff.  Am.

Compl. ¶ 12. Plaintiff and Mr. Salazar continued to work in close proximity to one another. Am. Compl. ¶ 12.

On or about January 3, 2011, Plaintiff contacted Doris Pendergrass, a human resources manager, to report her concerns about Mr. Salazar's hostility and Mr. Nguyen's denial of training, and Plaintiff's belief that her race and gender were the reasons for the conduct. Am. Compl. ¶ 13.

On or about January 14, 2011, in response to Plaintiff's complaint, Ms. Pendergrass told Plaintiff that JHH conducted an investigation. Am. Compl. ¶ 14. Ms. Pendergrass informed Plaintiff that JHH's investigation determined there was not any disparate treatment based on race or gender. Am. Compl. ¶ 14. Ms. Pendergrass also told Plaintiff that JHH took action against Mr. Salazar as a result of the investigation. Am. Compl. ¶ 14. Further, Ms. Pendergrass told Plaintiff that staffing and scheduling issues were the reason she did not receive the training she requested. Am. Compl. ¶ 14. Plaintiff disagreed with the way in which JHH conducted the investigation and the results of the investigation. Am. Compl. ¶ 14.

On February 3, 2011, Plaintiff informed JHH that she intended to file an EEOC Complaint. Am. Compl. ¶ 15. Plaintiff filed an EEOC Charge of Discrimination against JHH on February 15, 2011 for retaliation because she had been denied training and the opportunity for promotion. Am. Compl. ¶ 16.

Plaintiff took sick leave starting February 4, 2011. Am. Compl. ¶ 15. Plaintiff indicated that she needed sick leave because she started feeling stressed out about Mr. Nguyen and Mr. Salazar, and the result of JHH's investigation of her allegations about race and gender discrimination. Am. Compl. ¶ 15. Plaintiff indicated she would see her doctor for emotional stress, distress, and anxiety. Am. Compl. ¶ 15. Plaintiff visited her doctor on February 4, 2011.

Am. Compl. ¶ 16. Plaintiff's doctor took Plaintiff off work from February 8 – 16, during which time Plaintiff was totally incapacitated. Am. Compl. ¶ 16. Plaintiff's doctor released her to return to work without restrictions on February 16. Am. Compl. ¶ 16.

When Plaintiff sought to return to work on February 16, 2011, JHH told her that she needed to be cleared to return to duty by JHH's department of Occupational Health Services ("OHS"). Am. Compl. ¶ 17. Plaintiff went to OHS on February 17, 2011 and presented paperwork from her doctor releasing her to return to work without restrictions. Am. Compl. ¶ 17. A nurse in OHS informed Plaintiff that OHS would need to speak to her physician, to which Plaintiff consented. Am. Compl. ¶ 17. The OHS nurse instructed Plaintiff to sign two forms: one titled "Authorization for Release of Health Information to Johns Hopkins Occupational Health" ("Release") and another titled "Authorization for Use and/or Disclosure of Health Information of Johns Hopkins Workforce Member (Including Agency Staff) by Johns Hopkins" ("Disclosure"). Am. Compl. ¶ 17. Plaintiff refused to sign both forms. Am. Compl. ¶ 17. Plaintiff was not allowed to return to work. Am. Compl. ¶ 17.

On February 18, 2011, Plaintiff returned to OHS with written consent for OHS to speak to her doctor. Am. Compl. ¶ 18. OHS informed Plaintiff that she also needed to complete and sign the JHH Disclosure. Am. Compl. ¶ 18. Plaintiff refused to do so. Am. Compl. ¶ 18. Plaintiff then spoke to Ms. Nelson about returning to work. Am. Compl. ¶ 18. Ms. Nelson told Plaintiff that she needed to be cleared by OHS before she could return to work. Am. Compl. ¶ 18. Plaintiff left her conversation with Ms. Nelson understanding that she had been terminated. Am. Compl. ¶ 18.

On or about March 15, 2011, Plaintiff received a letter from JHH indicating that JHH placed her on a leave of absence from March 1, 2011 to April 28, 2011. Am. Compl. ¶ 19.

JHH terminated Plaintiff's employment on April 29, 2011.  Am. Compl. ¶ 19.

On June 6, 2011, Plaintiff amended her EEOC Charge of Discrimination to include race and sex discrimination and retaliation since February 15, 2011.  Am. Compl. ¶ 19.

### III.     STANDARD OF REVIEW

To withstand JHH's Motion under Fed. R. Civ. P. 12(b)(6), Plaintiff's Amended Complaint must set forth a claim for relief that is plausible on its face by asserting sufficient factual allegations that allow the Court to raise a right to relief above the speculative level and draw the reasonable inference that JHH is liable for the misconduct alleged.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81(2009); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009).  Though the plausibility standard is not akin to a probability requirement, it does require more than a sheer possibility that a defendant has acted unlawfully.  *Ashcroft*, 556 U.S. at 680-81.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "A complaint is also insufficient if it relies upon 'naked assertions devoid of further factual enhancement.'"  *Iqbal*, 556 U.S. at 678.  This is because mere conclusory statements setting forth the elements of a cause of action do not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555 for the proposition that courts are not bound to accept as true a legal conclusions couched as factual allegations).

# IV.    ARGUMENT

## A.    Plaintiff has not and cannot plead actionable claims under Title VII.

### 1.    Plaintiff cannot rely on untimely allegations to support her claims for violations of Title VII.

#### a.    Plaintiff's Title VII claims cannot proceed based on her untimely allegations in ¶¶ 8-10 in her Amended Complaint.

Plaintiff cannot sue for conduct allegedly taking place more than 300 days before she filed her first EEOC Charge of Discrimination on February 15, 2011.  Under Title VII, a plaintiff in Maryland must file an administrative charge with the EEOC within 300 days of the alleged misconduct.  42 U.S.C. § 2000e-5(e)(1); *Tinsley v. First Union Nat'l Bank*, 155 F. 3d 435, 439 (4th Cir. 1998)*, overruled on other grounds by, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  The time limit to file an administrative charge acts like a statute of limitations. *Williams v. Giant Food, Inc.*, 370 F. 3d 423, 428 (4th Cir. 2004).  When a plaintiff fails to timely file claims under Title VII, the claims are barred in the same manner as if the plaintiff failed to timely comply with a statute of limitations.  *Williams*, 370 F. 3d at 428.

Plaintiff's allegations in ¶¶ 8-10 involve conduct taking place more than 300 days before she filed a Charge with the EEOC.  In ¶ 8, Plaintiff addresses an incident in June 2009.  In ¶ 9, Plaintiff addresses conduct taking place in January 2010.  In ¶ 10, Plaintiff addresses conduct taking place in February 2010.  Since the alleged actions took place more than 300 days before Plaintiff filed her first Charge of Discrimination with the EEOC in February 2011, she cannot rely on these allegations as support for her claims.

#### b.    Plaintiff cannot rely on the continuing violation doctrine to revive her untimely allegations in ¶¶ 8-10 in her Amended Complaint.

Plaintiff cannot rely on the continuing violation doctrine to excuse her failure to timely file a Charge with the EEOC.  The continuing violation doctrine is not available for discrete acts

of discrimination even when they are related to timely alleged acts. *Williams*, 370 F. 3d at 429

(explaining that an employee must file a Charge within the appropriate limitations period as to

each discrete act of discrimination alleged). A failure to promote is a discrete act of

discrimination. *Williams*, 370 F. 3d at 429. Likewise, imposition of discipline is a discrete act of

discrimination. *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 990 (D. Md. 1999).

Plaintiff's allegations in ¶¶ 8-10 allege discrete acts of discrimination by Mr. Nguyen

taking place more than 300 days before she filed an EEOC Charge. In ¶ 8, Plaintiff alleges Mr.

Nguyen reprimanded her, although she does not allege the reprimand amounted to disciplinary

action. In ¶ 9, Plaintiff alleges Mr. Nguyen failed to promote her from July 2009 through

January 2010. In ¶10, Plaintiff alleges Mr. Nguyen reprimanded her in February 2010. Since

Plaintiff did not timely file an EEOC Charge regarding her allegations in ¶¶ 8-10, she cannot rely

on the continuing violation doctrine to save her claims based on these allegations.

### 2. Plaintiff's claim for retaliation in violation of Title VII fails to state a claim upon which relief can be granted.

Plaintiff's Count One does not provide sufficient factual allegations to support an

actionable claim for retaliation in violation of Title VII. In order to establish a prima facie claim

of retaliation in violation of Title VII, 42 U.S.C. § 2000e–3(a), Plaintiff must show: she engaged

in protected activity; JHH took adverse employment action against her; and a causal connection

existed between the protected activity and the adverse action. *Munday v. Waste Management of

North America, Inc.*, 126 F. 3d 239, 242 (4th Cir. 1997). Recently, the United States Supreme

Court held that the causal link must satisfy a but for causation standard. *University of Texas

Southwestern Medical Center v. Nassar*, --- U.S. ---, 133 S. Ct. 2517, 2528 (June 24, 2013).

Furthermore, the causal link cannot be merely inferred based on factual allegations of routine

conduct that a plaintiff may deem inconvenient, inconsiderate, or cruel. *Settle*, 34 F. Supp. 2d at 993.

None of the factual events Plaintiff alleges satisfy the requirements for an actionable claim for retaliation. The following explains the specific failures of the premises for Plaintiff's retaliation claim:

      a.    <u>In November 2010, Plaintiff reported to Mr. Nguyen two instances in which she claimed Mr. Salazar confronted her. Am. Compl. ¶¶ 12, 23.</u>

          i.    *Plaintiff did not engage in protected activity.*

Even accepting Plaintiff's allegations as true, her alleged reports to Mr. Nguyen were not activity protected by Title VII. Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful practice by . . . [Title VII]". 42 U.S.C. § 2000e–3(a). Title VII does not make unlawful the normal everyday dissatisfactions and annoyances common to workplaces or from the sometimes unpleasant, surly, strict, or insufferable co-worker. *Settle*, 34 F. Supp. 2d at 991. Therefore, complaints about such abuse cannot constitute protected activity. *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 589 (D. Md. 2002).

Nowhere does Plaintiff allege a report to Mr. Nguyen of the type protected by Title VII.[4] *Settle*, 34 F. Supp. 2d at 1003 (explaining that neutral terms lacking any nexus to protected classifications are insufficient to support a claim for violation of Title VII because discourtesy or rudeness is not the same as unlawful conduct). Plaintiff claims she reported that Mr. Salazar told her, "You need to learn your manners," called her a "fucker," blocked her entry to a celebratory event and after moving out of her way said, "shut up, shit head." Am. Compl. ¶ 12. None of

---

[4] Plaintiff also alleges her protected activity included her June 2010 request for training and promotion from Mr. Nguyen. Am. Compl. ¶ 23. Requesting training and/or promotion are not activities Title VII protects and cannot serve as the basis for a retaliation claim. *Chika*, 179 F. Supp. 2d at 589.

Plaintiff specific pleadings concerning Mr. Salazar's alleged statements relate in any way to a protected class to which Plaintiff belongs. In fact, Plaintiff alleges that she addressed the matter with Mr. Nguyen because of concerns "that Mr. Salazar was becoming more violent and hostile" towards her. Am. Compl. ¶ 12. By her own allegations then, when Plaintiff reported the events to Mr. Nguyen, she only mentioned conduct that courts deem unpleasant or insufferable work conditions that Title VII does not prohibit. As a result, Plaintiff's November 2010 reports to Mr. Nguyen do not constitute opposition to conduct made unlawful by Title VII. Thus, her reports did not and cannot serve as a basis for an actionable retaliation claim.

ii.     *Plaintiff did not suffer an adverse employment action.*

Nor does Plaintiff allege an adverse action after she made the reports to Mr. Nguyen. Absent an allegation of an adverse action, Plaintiff's retaliation claim is not actionable. *Munday*, 126 F. 3d at 242.

Plaintiff takes issue with the manner in which Mr. Nguyen responded to her complaint. Am. Compl. ¶ 12. She claims Mr. Nguyen did not meet with her, did not reprimand Mr. Salazar in front of her, and allowed Mr. Salazar to continue working in close proximity to her. Am. Compl. ¶ 12. In her own words, Plaintiff claims Mr. Nguyen did "nothing to correct or protect Plaintiff from Mr. Salazar." Am. Compl. ¶ 13. Plaintiff's allegations do not show an adverse action prohibited by Title VII. *Munday*, 126 F. 3d at 242-43 (holding that there was no adverse employment action when the plaintiff's manager failed to act appropriately and refused to communicate with the plaintiff concerning her employment-related complaints because the complaints were addressed, investigated, and where appropriate, corrected by other employees). As Plaintiff alleges, her dissatisfaction caused her to escalate her concerns to Ms. Pendergrass, Am. Compl. ¶¶ 13, 22, and eventually file an EEOC Charge, Am. Compl. ¶¶ 15, 16. Nothing

Mr. Nguyen did in response to her reports prevented her from taking any of these subsequent actions. Therefore, Plaintiff fails to allege an adverse action relating to her November 2010 reports to Mr. Nguyen. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This means that her retaliation claim predicated on her reports fails to state a claim upon which relief can be granted.

      b.    <u>On January 3, 2011, Plaintiff contacted human resources manager Doris Pendergrass to complain that her race and gender were the reasons why Mr. Nguyen denied her training and Mr. Salazar confronted her. Am. Compl. ¶¶ 13, 22.</u>

        i.    *Plaintiff did not suffer an adverse employment action.*

Plaintiff's allegations fail to allege an adverse action after her complaint to Ms. Pendergrass and cannot form the basis for a viable retaliation claim. Absent an allegation of an adverse action, Plaintiff's retaliation claim is not actionable. *Munday*, 126 F. 3d at 242.

Plaintiff alleges Ms. Pendergrass told her JHH conducted an investigation and took appropriate action as a result of its findings. Am. Compl. ¶ 14. The fact that Plaintiff alleges she did not agree with the manner in which JHH conducted the investigation or its results is insufficient to allege an adverse action. *Munday*, 126 F. 3d at 242-43. Plaintiff remained undeterred and eventually filed an EEOC Charge. Am. Compl. ¶ 16.

Plaintiff also makes a claim without factual support that JHH continued to deny her training and a promotion. Am. Compl. ¶ 24. In the absence of additional factual allegations, Plaintiff must be referring Mr. Nguyen's denial of training that took place prior to her complaint to Ms. Pendergrass.[5] As explained in the next paragraph, these allegations are not sufficient to

---

[5] In her allegations at ¶¶ 22-24, Plaintiff fails to provide factual specifics regarding when she engaged in the alleged protected activity, how she engaged in protected activity *i.e.*, the form it took, or when the identified adverse actions took place. In addition, in her allegations in ¶24, Plaintiff does not specify the protected activity leading to the alleged adverse actions. Given the lack of sufficient factual detail in Plaintiff's Amended Complaint, she fails to plead a plausible

show actionable retaliation. Since Plaintiff fails to allege an adverse action relating to her January 3, 2011 complaint to Ms. Pendergrass, her retaliation claim predicated on her complaint fails to state a claim upon which relief can be granted.

ii. *Plaintiff cannot show the required causal link.*

Even accepting as true Plaintiff's allegations, since she claims in ¶¶ 11 – 13, 24 that Mr. Nguyen and Mr. Salazar engaged in the alleged conduct prior to her complaint to Ms. Pendergrass, Plaintiff cannot show the required link between adverse action and protected activity. Retaliation in violation of Title VII cannot occur prior to Plaintiff engaging in protected activity. *Elezovic v. England*, 2005 WL 487127 at *5 (D. Md. Feb 15, 2005).

Plaintiff claims Mr. Nguyen denied her training and a promotion before she reported Mr. Salazar's conduct to Ms. Pendergrass. Am. Compl. ¶¶ 11 - 13. It is impossible for Mr. Nguyen to retaliate in violation of Title VII prior to Plaintiff engaging in activity protected by Title VII. *Elezovic v. England*, 2005 WL 487127 at *5 (D. Md. Feb 15, 2005). Further, even assuming *arguendo* that Mr. Nguyen, in part, continued to deny Plaintiff training and a promotion after her complaint, Plaintiff has not stated a viable retaliation claim. The United States Supreme Court recently held that mixed motive theories are not permissible in Title VII retaliation actions. *Nassar*, 133 S. Ct. at 2528-29. Thus, even accepting as true Plaintiff's allegations, her retaliation claim cannot proceed on her allegation that JHH continued to deny her training. This allegation shows, at a minimum, JHH denied training to Plaintiff before her alleged protected activity and, therefore, for a reason unrelated to her alleged protected activity. This means at best her

---

claim for retaliation and Count One should be dismissed. *Benahmed v. BAE Sys. Tech. Solutions & Services, Inc.*, 2012 WL 5426432 at *5 (D. Md. Nov. 6, 2012) (finding that the plaintiff's failure to allege sufficient facts regarding the dates when pertinent events took place and how he engaged in alleged protected activity made his retaliation claim subject to dismissal).

retaliation claim is based on a mixed motive.  Since a mixed motive retaliation claim is not permissible, her claim fails.

          c.      <u>On February 3, 2011, Plaintiff indicated that she intended to file, and on February 15, 2011[6] did file, an EEOC Charge of Discrimination.  Am. Compl. ¶¶ 15, 16.</u>

              i.      *Plaintiff cannot show the required causal link.*

The alleged denial of training and promotion mentioned in Plaintiff's EEOC Charge took place prior to Plaintiff engaging in protected activity by filing the EEOC Charge.  Therefore, there cannot be any causal link.  Specifically, Plaintiff alleges she filed her EEOC Charge for retaliation <u>because</u> Mr. Nguyen denied her training and an opportunity for promotion (emphasis added).  Am. Compl. ¶ 16.  Plaintiff alleges that she was denied training and promotion in November 2010 and that she did not file an EEOC Charge until February 2011.  Am. Compl. ¶¶ 11, 16.  It is impossible for JHH to retaliate in violation of Title VII prior to Plaintiff engaging in activity protected by Title VII.  *Elezovic*, 2005 WL at *5.

Furthermore, after February 4, 2011, Plaintiff did not return to work.  As she alleges, following her threat to file a Charge with the EEOC, JHH granted her request to use sick leave and she was not at work from February 4 - 16, 2011.  Am. Compl. ¶¶ 15, 16.  Plaintiff further alleges that she never returned to work even after her sick leave ended.  Am. Compl. ¶¶ 17 - 19.  Since Plaintiff did not return to work, she could not have received training or a promotion.  Thus, JHH could not have taken the adverse action of denying training and promotion in retaliation for Plaintiff filing her EEOC Charge.  As a result, Plaintiff's allegation that JHH continued to deny her training and a promotion cannot serve as the premise for her retaliation claim.

---

[6] Curiously, Plaintiff alleges that she filed her EEOC Charge on February 15 while in the same paragraph she alleges that she "was totally incapacitated" from February 8 – 16 and under the continuous care of her doctor.  Am. Compl. ¶ 16.

Plaintiff's allegations in ¶ 24 that JHH did not allow her to return to work in February 2011 and terminated her employment on April 29, 2011 similarly fail to state an actionable claim for retaliation.

First, neither factual occurrence is an adverse action. Absent an allegation of an adverse action, Plaintiff's retaliation claim is not viable. *Munday*, 126 F. 3d at 242. When Plaintiff sought to return to work, she declined to cooperate with OHS and complete the necessary steps to receive clearance to return to work. Am. Compl. ¶¶ 17, 18. Plaintiff's own allegation is that personal reasons caused her to refuse to sign forms (later just the Disclosure) required by OHS. Am. Compl. ¶¶ 17, 18. Therefore, Plaintiff's own decision, and not actions by JHH, resulted in her inability to return to work. Then, solely in her own judgment, Plaintiff decided that her employment terminated. Am. Compl. ¶ 18.

Plaintiff does not allege that JHH communicated anything to her or anyone else or took any action towards her that even suggested that her employment terminated. Rather, as Plaintiff alleges, after she declined to cooperate with OHS, JHH placed her on leave March 1 – April 28, 2011. Am. Compl. ¶ 19. Placing Plaintiff on leave is not an adverse action upon which she can base a retaliation claim. *Kirby v. Frontier Medex, Inc.*, 2013 WL 5883811 at * 11 (D. Md. Oct. 30, 2013) (citing *Joseph v. Leavitt*, 465 F. 3d 87 (2nd Cir. 2006) for the proposition that placing an employee on leave pending an investigation did not constitute an adverse employment action for purposes of Title VII).

Likewise, Plaintiff's allegations in ¶¶ 19 and 24 that JHH formally terminated her employment on April 29, 2011 does not provide the necessary adverse action to make her retaliation claim viable. When Plaintiff refused to cooperate and complete the process to return

to work, her conduct amounted to a voluntary resignation. When a plaintiff voluntarily resigns, she cannot show the necessary adverse action to support a retaliation claim. *Munday*, 126 F. 3d at 243 (citing *Evans v. Davie Truckers, Inc.*, 769 F. 2d 1012, 1014 (4th Cir. 1985) for the proposition that when a plaintiff voluntarily resigns she cannot show the required adverse action to support a Title VII retaliation claim). The fact that JHH accepted her resignation and formally terminated her employment does not change the fact that it was Plaintiff's own decision to refuse to execute the Disclosure and resign that caused her employment to end. Therefore, Plaintiff cannot rely on the end of her employment to show an adverse action upon which she can base a meritorious claim for retaliation.

> ### iii. *Plaintiff cannot show the required causal link based on conduct after she filed her EEOC Charge.*

Second, Plaintiff cannot show the required causal link even assuming the Court decides there was an adverse action after she filed her EEOC Charge. Plaintiff's own allegations show that her refusal to cooperate with OHS and not her protected activity of filing a Charge with the EEOC resulted in her being unable to return to work and her employment termination. Am. Compl. ¶¶ 17, 18. There are no allegations that OHS knew Plaintiff filed an EEOC Charge. OHS could not retaliate against Plaintiff if it was unaware of her alleged protected activity. *Chika*, 179 F. Supp. 2d at 587-88 (holding that there was no causal connection to support retaliation claim when alleged retaliating employee did not know that the plaintiff had filed an EEOC Charge). Nor are there or could there be any allegations that OHS foreclosed the possibility of Plaintiff returning to work. OHS merely told Plaintiff that she needed to comply with its return to duty process before being able to resume work. Indeed, the facts alleged by Plaintiff show that JHH permitted her to use sick time and granted her additional leave and that it was Plaintiff's own decision not to return to work. Given Plaintiff's allegations, she has not and

cannot show the required causal connection necessary to maintain a retaliation claim. *Freeman v. North State Bank*, 282 Fed. Appx. 211, 218 (4th Cir. 2008) (holding that the plaintiff failed to establish a causal link for retaliation claim when her employer terminated her after she exhausted all available leave plus extra leave granted by her employer and still did not return to work). Consequently, Plaintiff cannot, and should not be permitted to by further amendment, support her bald allegation that there is a causal link between filing an EEOC Charge and her failure to return to work and her employment termination. The facts alleged show the exact opposite.

**3.     Plaintiff's claims for sex, race and gender discrimination in violation of Title VII fail to state claims upon which relief can be granted.**

Plaintiff's claims for gender and race discrimination fail because she has not set forth sufficient factual allegations stating the necessary elements for an actionable claim. Plaintiff's claim for sex discrimination also fails to state the necessary facts for a cause of action and, contains factual allegations duplicative of those in Counts One (retaliation), Two (gender discrimination), and Four (gender harassment) and fails for the reasons each of these Counts fail as explained in this Memorandum.

To establish a prima facie case of discrimination[7], Plaintiff must show:  she is a member of a protected class; she suffered an adverse employment action; she was performing satisfactorily at the time of the adverse employment action; and similarly situated employees

---

[7] There are two methods for showing unlawful employment discrimination:  through direct or indirect evidence of intentional discrimination; or through circumstantial evidence using the three-step burden shifting scheme set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802-05 (1973). *Boyd v. Gutierrez*, 2005 WL 2653946 at *3 (D. Md. Oct. 17, 2005). Plaintiff has not alleged facts showing direct or indirect of evidence of intentional employment discrimination. She has not alleged facts showing evidence of a stated purpose to discriminate and/or indirect evidence of conduct or statements that both reflect directly a discriminatory attitude and impacted the contested adverse employment action. *Boyd*, 2005 WL at *3.

outside the protected class received more favorable treatment. *Freeman v. North State Bank*, 282 Fed. Appx. 211, 216 (4th Cir. 2008).

      a.      <u>Plaintiff's causes of action for gender (Count Two) and race (Count Three) discrimination fail to allege the necessary elements for actionable claims.</u>

Plaintiff's claims for gender and race discrimination based on an alleged failure to promote and provide training and disciplinary action fail because Plaintiff has not alleged facts showing an adverse action or that other similarly situated employees outside her protected classification received more favorable treatment.

In order to establish a *prima facie* case based on her allegations of denied training/promotion, Plaintiff must show that: she is a member of a protected class; JHH provided training/promotion to its employees; Plaintiff was eligible for the training/promotion; and she was not provided training/promotion under circumstances giving rise to an inference of discrimination. *Boyd*, 2005 WL at *5. As to allegations of discriminatory discipline, Plaintiff must show that: she is a member of a protected class; the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside her protected class; and the disciplinary measures enforced against her were more severe than those enforced against those other employees. *Boyd*, 2005 WL at *6.

      i.      *Plaintiff has not shown similarly situated employees were treated more favorably.*

Plaintiff's claims for gender and race discrimination are not actionable because she has failed to make any factual allegations that similarly situated employees outside her protected classifications were treated more favorably.

Plaintiff alleges that she was denied training and promotion after she received certification to be a phlebotomist in November 2010. Am. Compl. ¶¶ 11, 13 – 14, 30 – 31, 36 -

37.  However, Plaintiff does not allege any facts showing that JHH provided training or promotions or that any similarly situated employees outside her protected class received training or promotion.  Rather, Plaintiff merely alleges that unnamed employees received training at some unidentified time under undescribed circumstances.  Am. Compl. ¶ 14.  As a result, Plaintiff has not pled sufficient facts to state a cause of action based on denial of training and/or promotion.  *Boyd*, 2005 WL at *5; *Burgess v. Howard County Police Dep't*, 2013 WL 5442420 at *4 (D. Md. Sept. 30, 2013) (dismissing Title VII claim because the plaintiff  failed to allege sufficient facts that similarly situated individuals were treated differently and, instead, only alleged "that white officers" and "two unidentified white officers" were similarly situated and received more favorable treatment and citing *Haywood v. Locke,* 387 F. Appx 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'")).

Plaintiff further alleges that she received discipline for engaging in rude or discourteous behavior following an exchange with Mr. Salazar.  Am. Compl. ¶¶ 10[8], 30.  Plaintiff does not deny the merit of the disciplinary action but takes issue with the fact that Mr. Nguyen disciplined her in front of her co-workers.  Am. Compl. ¶ 10.  Later in her Amended Complaint, Plaintiff alleges that Mr. Salazar was not initially disciplined for seemingly similar conduct (Am. Compl. ¶ 12) but that he was eventually similarly disciplined (Am. Compl. ¶ 14).  Plaintiff's claim cannot proceed based on these allegations because the only arguably similarly situated employee, Mr. Salazar, received similar discipline for similar conduct.  This is true even though Plaintiff

---

[8] Assuming the Court declines to find the allegations in ¶ 10 are not untimely as explained already.

downplays her conduct and emphasizes the nature of Mr. Salazar's conduct. *Boyd*, 2005 WL at

*6 (explaining that a court will not act as a super personnel agency that categorizes what conduct

is serious versus petty because a court's role is to determine whether the plaintiff has pled

sufficient facts to show a prima facie case). The relevant consideration is that, since Plaintiff has

not and cannot show similarly situated employees received more harsh discipline, she has failed

to state an actionable Title VII cause of action. *Boyd*, 2005 WL at *6 (citing *Martin v.*

*Montgomery County Public Schs.*, 223 F. Supp. 2d 742, 743–44 (D. Md. 2002) (finding that the

plaintiff failed to establish a prima facie case of discrimination when he only offered his own

subjective opinions that the performance evaluations given to him were unfair and presented no

facts that a similarly situated employee outside his protected class was treated any differently)).

*ii.*     *Plaintiff did not suffer an adverse employment action.*

Furthermore, Plaintiff's claims fail because she has not made any factual allegations of an

adverse action. Plaintiff must also show that the alleged denial of training/promotion was an

adverse action in that it adversely affected her terms, conditions, or benefits of employment.

*Boyd*, 2005 WL at *3 (quoting *Munday*, 126 F. 3d at 243); *Floyd v. United States Dept. of*

*Homeland Security*, 2009 WL 3614830 at *6 (D. Md. Oct. 27, 2009).

Plaintiff alleges she suffered a delay in receiving a promotion to full-time status. Am.

Compl. ¶¶ 9, 30-31. However, since Plaintiff alleges that she received the promotion to full-time

status, she has not and cannot show an adverse action predicated on these allegations. *Boyd*,

2005 WL at *5 (explaining that when a plaintiff's training is delayed but takes place the next

month, there is no adverse action).

Plaintiff next alleges that she was denied training and promotion after she received

certification to be a phlebotomist in November 2010. Am. Compl. ¶ 11. However, Plaintiff's

claim as predicated on this premise fails because Plaintiff has not pled any facts showing that the alleged denial adversely affected the terms, conditions, or benefits of her employment. Rather, as to the only performance review mentioned in her Amended Complaint, Plaintiff alleges that she received a "highly proficient" rating. Am. Compl. ¶ 8. There are no other allegations aside from boilerplate legal conclusions that the denial of training/promotion had any adverse impact on Plaintiff's employment. For example, Plaintiff does not allege she suffered or might suffer any penalties for failing to receive training and/or promotion. Nor does Plaintiff allege a specific open position for which she applied. *Floyd*, 2009 WL at *6 (citing *Foreman v. Weinstein*, 484 F. Supp. 2d 608, 613 (D. Md. 2007) for the proposition that a plaintiff alleging a failure to promote claim must show, among other things, that there was an open position for which she applied or sought to apply). As a result, Plaintiff has not pled sufficient facts to advance a claim for gender or race discrimination on this basis. *Boyd*, 2005 WL at *5 (citing *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003) ("Although something less than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy.")).

      b.    <u>Plaintiff's claim for sex discrimination (Count Six) is not actionable because Plaintiff has not alleged a claim different from those contained elsewhere in her Amended Complaint.</u>

Plaintiff's claim for sex discrimination in Count Six fails to state the necessary facts for a cause of action and is, instead, duplicative of her other Counts. The predicate allegation in Count Six is that JHH failed to take corrective action for mistreatment allegedly suffered by Plaintiff because she is a female. Am. Compl. ¶ 55. This is duplicative of Plaintiff's Counts for retaliation, gender discrimination, and gender harassment. JHH incorporates its arguments for dismissal of these Counts into its reasons for dismissal of Count Six. As a result, for the reasons stated, Count Six fails to state an actionable claim and the Court should dismiss it in its entirety.

**4.** **Plaintiff's claims for gender and race harassment in violation of Title VII fail to state claims upon which relief can be granted.**

Plaintiff's Counts Four (gender harassment) and Five (race harassment), based on allegations regarding Mr. Salazar's conduct, fail because Plaintiff has not alleged conduct that was based on her gender or race and that was severe or pervasive such that it created an abusive work environment.

The standard to prove a harassment claim under Title VII is a high one. *Chika*, 179 F. Supp. 2d at 588. To establish a hostile work environment claim, Plaintiff must prove that: the conduct in question was unwelcome; the harassment was based on a classification protected by Title VII; the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and there is some basis for imposing liability on JHH. *Settle*, 34 F. Supp. 2d at 993. Acts that are isolated or trivial cannot provide the basis for a viable hostile work environment claim. *Id.*

     a.     <u>Plaintiff has not shown unwelcome conduct based on her protected classifications.</u>

Even accepting Plaintiff's allegations as true, she has failed to state a claim for actionable harassment because she has not alleged facts showing conduct based on her gender or race. To establish that the alleged harassment was based on her gender or race, Plaintiff must do more than just claim membership in a protected class; Plaintiff must show that she was singled out for adverse treatment by the harasser because of her membership in a group protected by Title VII. *Simmington v. Gates*, 2010 WL 1346462 at *15 (D. Md. Mar 30, 2010). Allegations lacking a direct or inferential connection to a protected classification cannot support a claim for hostile work environment harassment. *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001) (citing *Smith v. Allied Sys., Ltd.*, 2000 WL 708909 at *5 (D. Md. 2000) (rejecting claim of hostile environment discrimination where the plaintiff offered "no evidence that the harassment

he complained about was based on race"); *Settle*, 34 F. Supp. 2d at 1003 (refusing to consider allegations because they were racially neutral, and there was no indication that the underlying acts and omissions occurred because of the plaintiff's race); *Porter v. Nat'l Con-Serv, Inc.*, 51 F. Supp. 2d 656, 659 (D. Md. 1998) (refusing to consider a co-worker's threat with a pair of scissors in a hostile environment claim because there was no evidence that the threat was related to the plaintiff's race)).

Plaintiff's allegations regarding her exchanges with Mr. Salazar do not contain facts regarding her gender or race. Plaintiff alleges Mr. Salazar stated to her, "you need to learn your manners," called her a "fucker," and said to her, "shut up shit head." Am. Compl. ¶ 12. Based on her exchanges with Mr. Salazar, Plaintiff alleges that Mr. Salazar was "aggressive," "violent," and hostile towards her. Am. Compl. ¶ 12. Plaintiff makes no factual allegations showing that Mr. Salazar's purported conduct referenced her race or gender, was motivated by her race or gender, or impacted Plaintiff because of her race or gender. In other words, Plaintiff has failed to allege any factual details to support her bald allegations that the complained of conduct was because of her gender or race.

In cases involving similar factual allegations, Courts, including this one, have determined that the type of conduct alleged here by Plaintiff fails to show harassment because of a classification protected by Title VII. Specifically, in *Floyd*, this Court held that the plaintiff failed to provide sufficient allegations showing improper treatment on account of a protected status when the plaintiff alleged she was disrespected, treated like a child by colleagues and supervisors, and threatened by a co-worker. 2009 WL 3614830 at *8 (granting motion to dismiss for failure to state a claim for hostile work environment).

Likewise, the Court in *Chika*, 179 F. Supp. 2d at 588, explained that a handful of unkind

remarks by co-workers like those alleged here by Plaintiff are insufficient to state a claim. In *Chika*, the plaintiff alleged she was called an "asshole," "knucklehead," "dick," and told "he had no life." *Id.* The plaintiff in *Chika* also claimed he was harassed when a co-worker repeatedly exhibited violent behavior towards him. *Id.* As the Court should find in this case, the *Chika* Court held that these allegations failed as a matter of law to show a hostile work environment. *Id.*

b.    <u>Plaintiff has not pled severe or pervasive conduct.</u>

Plaintiff has also failed to allege facts showing severe or pervasive harassment that created an abusive work environment. "The standard for proving an abusive work environment is intended to be a very high one." *Jackson*, 171 F. Supp. 2d at 542. To determine whether alleged conduct is sufficiently severe or pervasive to show an alteration of the terms and conditions of employment, a court examines the totality of the circumstances, including the frequency of the alleged harassing conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the plaintiff's work performance. *Settle*, 34 F. Supp. 2d at 990. In addition, courts judge the objective severity of alleged harassment from the perspective of a reasonable person in the plaintiff's position. *Floyd*, 2009 WL at *8.

Plaintiff's allegations concerning her interactions with Mr. Salazar show nothing more than non-actionable workplace friction. Plaintiff predicates her hostile environment claims on three exchanges with Mr. Salazar during which she alleges that Mr. Salazar was "aggressive," "violent," "hostile," "offensive," and "abusive" towards her. Am. Compl. ¶ 12. Plaintiff's characterization of Mr. Salazar's conduct undercuts her claim. Even when they are aggressive and/or unfriendly, facially neutral acts like those alleged by Plaintiff fail to show the required severity or pervasiveness necessary for an actionable hostile work environment claim. *Jackson*,

171 F. Supp. 2d at 542 (quoting *Settle*, 34 F. Supp. 2d at 974).  It is also telling that Plaintiff alleges earlier in her Amended Complaint that the friction between her and Mr. Salazar began by February 2010 when Mr. Salazar complained about Plaintiff's conduct and Plaintiff received discipline for rude or discourteous behavior.  Am. Compl. ¶ 10.  Notably, aside from her allegations about her own conduct and the conduct of Mr. Salazar as noted, Plaintiff does not make any allegations referencing epithets or facially discriminatory comments in ¶ 12, which serves as the crux of her hostile work environment claims.  Therefore, the totality of Plaintiff's allegations over the course of her workplace conflict with Mr. Salazar lack sufficient substance to show conduct because of Plaintiff's gender or race, which could then show the severity or pervasiveness required to maintain a hostile work environment claim.  *Rock v. McHugh*, 819 F. Supp. 2d 456, 471 (D. Md. 2011) (explaining that conduct must be far more severe than that of an unpleasant working environment to support an actionable hostile work environment claim); *Ragland v. A.W. Indus., Inc.*, 2009 WL 2507426 at * 10 (D. Md. Aug. 13, 2009)  (dismissing hostile work environment claim and noting that courts most often find merit to hostile workplace claims where employers direct epithets, overtly discriminatory, invidious, outrageous, or intolerable statements and or actions to employees).

**B.**     **Count Seven does not state an actionable claim for negligent hiring, supervision, and retention.**

      **1.**     **Plaintiff has not alleged sufficient facts to survive a motion to dismiss for failure to state a claim.**

Plaintiff has not alleged facts showing the necessary elements for a viable claim for negligent hiring, supervision, and retention.  To state a viable claim for negligent hiring, supervision, and retention, Plaintiff must plead facts showing that her alleged injury was caused by the tortious conduct of a co-worker; that JHH knew or should have known by the exercise of diligence and reasonable care that Plaintiff's co-worker was capable of inflicting the harm; that

JHH failed to use proper care in hiring, supervising, and retaining the co-worker; and that JHH's breach of its duty was the proximate cause of Plaintiff's injuries. *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 487-88 (D. Md. 2013); *Bryant v. Better Bus. Bureau,* 923 F. Supp. 720, 751 (D. Md. 1996) (noting that in a claim for negligent training and supervision, the plaintiff must allege facts to show that her employer had or should have had knowledge of the co-worker's "conduct or general character which would have caused a prudent employer in these circumstances to have taken action.").

    a.    <u>Plaintiff has failed to plead sufficient facts to state an actionable claim.</u>

Plaintiff predicates her claim for negligent hiring, supervision, and retention solely on conclusory allegations and generalizations that are insufficient to meet the pleading requirements explained by the United States Supreme Court in *Iqbal* and *Twombly*. In *Iqbal*, the Supreme Court explained that a claim like Plaintiff's cannot survive a motion to dismiss because courts are not bound to accept as true legal conclusions couched as factual allegations. 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff has not pled sufficient allegations showing that JHH had or should have had knowledge of Mr. Salazar's general character or prior conduct that would require JHH to take action. Courts have dismissed negligent hiring, supervision, and retention claims for similar factual deficiencies. For example, in *Jarvis v. Securitas Security Services USA, Inc.*, 2012 WL 527597 at *5 (D. Md. Feb. 16, 2012), the court dismissed the plaintiff's negligent training and supervision claim because it did not contain any factual allegations and consisted solely of legal conclusions owed no deference on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

    b.    <u>Plaintiff has failed to show the required element of causation.</u>

Likewise, Plaintiff has also failed to plead facts showing the required element of causation because she has not shown JHH had a duty. In *Nana-Akua Takyiwaa Shalom*, 921 F.

Supp. 2d at 487-88, the court relied on a lack of facts regarding the defendant's knowledge of a co-worker's purported propensity to engage in tortious conduct to hold that the plaintiff failed to show the necessary element of causation. Given Plaintiff's similarly deficient allegations in Count Seven, the Court should hold that her claim must be dismissed. *Bryant,* 923 F. Supp. at 752 (explaining that a negligent hiring, supervision and retention claim is actionable only if it contains allegations showing the proximate cause of the claimed damages).

## 2. Maryland's statutory remedies for on the job injuries preempts Plaintiff's negligence claim.

The Maryland Workers' Compensation Act (the "Act") provides the exclusive remedy for Plaintiff's negligent hiring, supervision, and retention claim against JHH. "An employee's right to sue her employer for negligence in failing to use reasonable care to provide a safe workplace was abolished in 1914 when Maryland passed its first workers' compensation law." *Lagrimas v. Gossel*, 1993 WL 18951 at * 3 (D. Md. Jan. 25, 1993). This is because the Act provides covered employees compensation for lost earnings capacity resulting from accidental injury, disease, or death occurring in the course of employment. Md. Code, Labor and Employment, § 9-101 *et seq.* Thus, an employee suffering a covered injury may not pursue a common law negligence claim against her employer. Md. Code, Labor and Employment, § 9-509; *Gladhill v. Chevy Chase Bank, F.S.B.*, 2001 WL 894267 at *22 (Md. App. Aug. 1, 2001). The employee's only recourse is to seek redress under the Act. *Gladhill*, 2001 WL 894267 at *24.

In *Gladhill*, as here, the plaintiff alleged that his former employer breached its duty to protect him from another employee whom his employer should have known presented a risk to cause personal harm. Just like in Plaintiff's present case, the plaintiff in *Gladhill* alleged general injuries and economic losses flowing from employment termination occurring after the co-

worker's alleged misdeeds.  *Id.* at *22.  The Maryland Court of Special Appeals affirmed the

lower court's decision that the Act barred the plaintiff's negligent hiring, supervision, and

retention claim.  *Id.*  The simple reason was that since the plaintiff alleged his injuries resulted

from the negligent hiring, supervision, and retention of his co-worker, those injuries were within

the exclusive purview of the Act.[9]  *Id.* at 24.

In *Demby v. Preston Trucking Co.*, this Court held that the Act preempted the plaintiff-

employee's negligent supervision and retention claim.  In so doing, the Court held that the Act's

exclusive remedy preempts all claims for on the job injuries suffered by covered employees but

for those caused by an employer's deliberate intent to injure or kill.  *Demby*, 961 F. Supp. at 881

(citing *Lagrimas v. Gossel*, 1993 WL 18951 (D. Md. Jan. 25, 1993) (dismissing the plaintiff's

claim against her employer for negligence in failing to provide a safe workplace); *Plater v. UE &*

*C Catalytic, Inc.*, 1992 WL 414814 (D. Md. Oct. 14, 1992) (holding that the Act precluded the

plaintiff's claims for negligent hiring, retention and supervision)).  The fact that the plaintiff-

employee's claims included alleged "dignitary injuries d[id] not change the analysis."  *Id.*

As a matter of law, Plaintiff's Count Seven for negligent hiring, supervision, and

retention fits entirely within the Act's coverage.  Plaintiff claims JHH was negligent in the

manner in which it employed, and managed her co-worker, Mr. Salazar.  Compl. ¶ 62.  Plaintiff

seeks relief because of lost employment, pay, benefits, and for emotional pain and suffering,

mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries.

Compl. ¶ 63.  As Maryland's case law makes clear, the Act covers Plaintiff's alleged on-the-job

---

[9] The Court of Special Appeals did note certain exceptions to the exclusivity rule but none of
those is applicable in Plaintiff's case.  Specifically, exclusivity is not the rule in the case of
deliberate conduct by an employer or negligence by a third party.  *Id.* at *23.

injury and the types of damages she claims. Therefore, Count Seven is precluded by the Act, and must be dismissed.

**C.**     <u>Plaintiff cannot and has not stated a claim for relief under the FMLA.</u>

    **1.**     **Plaintiff has not and cannot state a claim for interference with FMLA rights.**

Nowhere in her Amended Complaint does Plaintiff allege that she was entitled to leave protected by the FMLA. Therefore, Plaintiff has not and cannot state a claim for unlawful interference with FMLA rights.

To state a claim for interference under the FMLA, a plaintiff must show that her employer denied her rights under the FMLA. *Adams v. Wallenstein*, 814 F. Supp. 2d 516, 524 (D. Md. 2011).[10] To have rights under the FMLA, a plaintiff must show that she satisfied the FMLA's qualifying condition standard.[11] *Id.* at 524-25. When a plaintiff fails to show she has FMLA rights, she cannot state a claim for interference with FMLA leave. *Id.* at 525; *Rhoads v. Federal Deposit Ins. Corp.,* 257 F. 3d 373, 384 (4th Cir. 2001) (explaining that a case for FMLA interference requires the plaintiff to show that she "was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered").

Plaintiff's claim for FMLA interference has a threshold deficiency because Plaintiff does not allege and cannot show that she even held any rights under the FMLA. Plaintiff does not

---

[10] Other courts have enumerated a prima facie case that a plaintiff seeking to show FMLA interference must plead. *Sills v. BFI Waste Services, LLC*, 2013 WL 812011 at *5 (D. Md. March 1, 2013). The elements a plaintiff must show are: that she was an eligible employee; her employer was covered by the FMLA; she was entitled to leave under the FMLA; she gave her employer adequate notice of her intention to take FMLA leave; and the employer denied FMLA benefits to which the plaintiff was entitled. *Id.* Under either legal standard, as explained, Plaintiff fails to state a claim for FMLA interference.

[11] In addition, Plaintiff also needs to show that the alleged interference prejudiced her in some way. *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002).

even use the term "FMLA" or "Family and Medical leave Act" in her factual allegations. Instead, Plaintiff alleges that she knew by no later than February 3, 2011 that she was "feeling stressed out" and planned to seek medical attention. Am. Compl. ¶ 15. Plaintiff then alleges that JHH permitted her to take **sick leave** starting February 4, 2011 (emphasis added). Am. Compl. ¶ 15. Most importantly, Plaintiff's Amended Complaint contains no allegations that JHH's provision of sick leave was somehow a violation of Plaintiff's rights. Thus, Plaintiff did not have any FMLA rights in the instances alleged in the Amended Complaint.

Relevant case law supports the conclusion that Plaintiff did not have any FMLA rights with which JHH could have interfered. In *Anderson v. Lockheed Martin Corp*, 2012 WL 933215 at *4 (D. Md. March 16, 2012), the Court held that the plaintiff failed to allege sufficient facts to state a claim for FMLA interference. The plaintiff's complaint alleged that the plaintiff informed her supervisor that she needed to take a couple weeks off work to provide care for her elderly mother. *Id.* The plaintiff also contended that she requested a flex schedule to allow her to take Fridays off to assist with the care of her mother. *Id.* Like the Court should conclude in this case, the *Anderson* Court held that the plaintiff's factual allegations failed to show FMLA entitlement because of a serious health condition. *Id.* Here, although Plaintiff makes a legal conclusion that she had a serious health condition, Am. Compl. ¶ 68, she does not allege any facts to justify her conclusion. Rather, Plaintiff alleges emotional stress, distress, and anxiety. Am. Compl. ¶ 15. As the court held in *Anderson*, absent any factual support for the bald allegation that Plaintiff suffered from a serious health condition, Plaintiff's unlawful interference claim fails. *Id.*; *Adams*, 814 F. Supp. 2d at 525 (indicating that in the absence of a serious medical condition, leave cannot be FMLA protected leave).

**2.      Plaintiff cannot state a claim for retaliation under the FMLA.**

Plaintiff has not and cannot allege an actionable claim of retaliation under the FMLA. An actionable claim for retaliation in violation of the FMLA requires that Plaintiff plead facts showing:  she engaged in protect activity under the FMLA; she suffered an adverse employment action; and there is a causal link between the protected activity and adverse action.  *Scott v. Sebelius*, 2013 WL 709765 at *5 (D. Md. Feb. 25, 2013).

The decision in *Anderson* explains why Plaintiff has failed to state a retaliation claim under the FMLA.  As in *Anderson*, Plaintiff cannot show she engaged in protected activity under the FMLA because she fails to plead sufficient facts showing she had a serious health condition as the FMLA defines that term.  2012 WL 933215 at *4.  In the absence of this necessary element, as the *Anderson* decision explains, Plaintiff did not and could not have used FMLA protected leave *i.e.,* engage in protected activity.  Simply stated, Plaintiff could not use FMLA leave when she was not entitled to FMLA leave.  *Id.*; *Adams*, 814 F. Supp. 2d at 525 (finding that the plaintiff could not show FMLA retaliation because the plaintiff lacked a serious medical condition and, therefore, his leave was not FMLA leave and that meant that the adverse actions he alleged could not be linked to protected activity).  Therefore, based on her own allegations, Plaintiff has failed to show the necessary element of protected activity.  Consequently, her FMLA retaliation claim fails and the Court should dismiss it.

Plaintiff's claim also fails because of a lack of protected activity given her allegation that she used sick leave and not FMLA leave.  Am. Compl. ¶ 15.  Using sick leave is not the same as using FMLA leave.  *Adams*, 814 F. Supp. 2d at 525.  Thus, even if she did have a serious health condition, since Plaintiff only used sick leave and not FMLA leave, she could not have suffered retaliation for anything related to FMLA leave.

Similarly, Plaintiff's Amended Complaint contains no allegations that she ever requested

FMLA leave or otherwise provided sufficient information to JHH that she might need FMLA leave such that she could have been retaliated against for doing so.  Plaintiff alleges that she told JHH that she was "stressed out" and planning to seek medical attention for "emotional stress," "distress," and "anxiety."  Am. Compl. ¶ 15.  As a matter of law, Plaintiff's allegations do not rise to the level of a serious medical condition for which FMLA leave might be available. *Adams*, 814 F. Supp. 2d at 525-26 (citing *Fischer v. NYC Dep't of Educ.,* 666 F. Supp. 2d 309, 318 (E.D.N.Y. 2009) (finding employee's request for leave form did not place employer on notice of request for time off for serious medical condition and consequently did not constitute protected activity underlying retaliation claim); *Brown v. The Pension Boards,* 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007) (finding that employee did not provide notice by simply calling in sick and providing vague doctor's note, defeating employee's retaliation claim); *Ney v. City of Hoisington, Kansas,* 508 F. Supp. 2d 877, 887 (D. Kan. 2007) (finding no protected activity where employee did not fill out paperwork requesting FMLA leave); *Henegar v. Daimler–Chrysler Corp.,* 280 F. Supp. 2d 680, 688 (E.D. Mich. 2003) ("[T]he Plaintiff must show that he availed himself of a protected right under the FMLA by notifying his employer of his need to take leave for a serious health condition.")).  It is well settled that simply asking for sick leave is not enough to put an employer on notice that FMLA leave may be needed.  *Adams*, 814 F. Supp. 2d at 526 (citing *Dotson v. Pfizer, Inc.*, 558 F. 3d 284, 295 (4th Cir. 2009)).  Indeed, Plaintiff does not allege that she took any issue with JHH's decision to permit her to use sick leave in response to the information she provided in February 2011.  To do so now would be disingenuous at best.  As a result, accepting Plaintiff's allegations as true, she has failed to show that JHH had sufficient notice that that she might be requesting FMLA leave.  Thus, since she did not do enough to indicate she might need FMLA leave, Plaintiff has not engaged in protected

activity and cannot maintain a retaliation claim.

### 3. The statute of limitations bars Plaintiff's claims for violations of the FMLA.

Even assuming Plaintiff had FMLA rights, Plaintiff's claims in Counts Eight and Nine fail to state a claim upon which relief can be granted because Plaintiff filed her lawsuit on September 9, 2013, which is more than two years following the termination of her employment, which occurred at the latest on April 29, 2011.

General FMLA claims are subject to a two-year statute of limitations whereas willful violations are subject to a three-year statute of limitations. 29 U.S.C. § 2617(c)(1)(2). Courts have determined that the two-year statute of limitations applies where the facts show that a defendant-employer granted a plaintiff-employee's request for leave, supplied the necessary FMLA forms, and followed up with the plaintiff-employee regarding insufficient paperwork. *Honeycutt v. Baltimore County, MD*, 2007 WL 1858691 at *3 (D. Md. June 18, 2007), *aff'd*, 278 Fed. Appx. 292 (4th Cir. 2008) (internal citations omitted). Likewise, courts apply the two-year statute of limitations when a plaintiff- employee's FMLA claim arises from negligence. *Id.* In contrast, though the FMLA does not define the term willful, courts have applied the three-year statute of limitations **only** when the facts show that a defendant-employer knew or showed reckless disregard for whether its conduct violated the FMLA (emphasis added). *Id.* Bald allegations of willful conduct that are not supported by facts are insufficient. *Passauer v. Quest Diagnostics, Inc.*, 2004 WL 865829 at *2 (D. Md. April 22, 2004). A plaintiff must plead facts that "permit the court to infer more than the mere possibility of misconduct" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 628 (D. Md. 2013).

<u>Plaintiff has not and cannot show a willful FMLA violation.</u>

Even taking as true Plaintiff's allegations, she has failed to state a claim for a willful violation of the FMLA.  In similar cases in which the defendant-employer, like JHH in this case, faced allegations purporting to support the application of the three-year statute of limitations, courts found insufficient showings of willfulness.  For example, in *Honeycutt*, the Court concluded that precedent compelled a finding that there was no willful violation of the FMLA because the facts showed that the defendant-employer granted the plaintiff-employee leave, worked with the plaintiff-employee to obtain the necessary leave paperwork, and made clear to the plaintiff-employee the consequences of noncompliance.  2007 WL 1858691 at *4.  In so finding, Judge Motz specifically found the plaintiff-employee's complaints that the defendant-employer unfairly applied FMLA requirements was at most a claim for negligence that did not rise to the level of willfulness.  *Id.*  Judge Motz also refused to find willfulness based on the allegation that the defendant-employer applied its legitimate, uniform FMLA process and procedure requirements to the plaintiff-employee.  *Id.* at *5.  Lastly, as the Court should do in this case, Judge Motz rejected the plaintiff-employee's bald allegations that manipulation and cruel treatment by co-workers demonstrated a willful violation of the FMLA.  *Id.*  Judge Motz did so because, as here, the plaintiff-employee's other allegations showed that the alleged workplace manipulation and cruelty did not stem from the use of FMLA leave and that the alleged bad actor did not have a role in the termination decision.  *Id.*  Instead, the plaintiff-employee's allegations showed "at most" that the alleged workplace situation was totally unrelated to FMLA rights.  *Id.*  Therefore, there could be no willful violation justifying the use of the three-year statute of limitations.  *Id.*

The court in *Phillips v. Raytheon Applied Signal Technology, Inc.*, 2013 WL 5440802 at *30 (D. Md. Sept. 27, 2013) also determined that the plaintiff-employee failed to allege facts of a

willful FMLA violation.  Since the plaintiff-employee failed to file her FMLA claim within the two-year limitations period after her employment terminated, her claim was barred.  *Id.*  As JHH did in this case, Raytheon, the defendant-employer, among other things, granted the plaintiff-employee's request for leave, provided her the necessary paperwork, notified her that a doctor's note would be required to return to duty, and placed her on leave to permit time to obtain the necessary medical clearance.  *Id.*  Given the circumstances, the court concluded that there was not a willful violation.  *Id.; cf. Anusie-Howard*, 920 F. Supp. 2d at 629 (finding that *pro se* litigant entitled to liberal construction of her complaint pled sufficient facts of a willful FMLA violation since she alleged that she was completely denied leave).

Likewise, in *Ayres v. Bierman, Geesing & Ward, LLC*, 2010 WL 481355 at * 3 (D. Md. Feb. 5, 2010), the court determined that the plaintiff-employee did not allege any facts to show a willful violation of the FMLA.  Just as JHH did in this case, the defendant-employer in *Ayres* granted the plaintiff-employee leave and provided her all the benefits and rights associated with that leave for its duration.  *Id.*  Consequently, as the Court should do here, the *Ayres* court determined the plaintiff-employee failed to show willfulness and was not entitled to the benefit of a three-year statute of limitations.  *Id.*  Therefore, the court dismissed her FMLA claim as untimely under the applicable two-year statute of limitations.  *Id.*

The applicable case law compels finding that Plaintiff is not entitled to a three-year statute of limitations for her FMLA claim.  As a result, since her claim is time barred by the two-year statute of limitations, the Court should dismiss with prejudice Counts Eight and Nine for failure to state a claim.

b. JHH's requirement that Plaintiff execute its Disclosure form does not show a willful FMLA violation.

To the extent Plaintiff focuses her allegation of willfulness on JHH's requirement that she complete JHH's standard Disclosure form, she has equally failed to show a knowing or reckless FMLA violation entitling her to the benefit of the three-year statute of limitations.

Pursuant to FMLA regulations, an employer such as JHH may lawfully delay restoring to duty an employee like Plaintiff until the employee provides either a complete and sufficient certification from her doctor or the necessary authorization to allow her doctor to release a complete and sufficient certification to her employer. 29 C.F.R. § 825.305 (d); 29 C.F.R. § 825.313(d).[12] When obtaining authorization to speak directly to an employee's doctor, the FMLA regulations mandate that JHH satisfy the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule because the communications will involve individually identifiable health information of an employee transmitted from a HIPAA-covered health care provider. 29 C.F.R. § 825.307. Given the FMLA regulations, JHH was within its rights and acting in accordance with law when it required Plaintiff to execute its standard Disclosure form. Since JHH acted within its FMLA rights and obligations and did not deny Plaintiff any rights she may have under the FMLA, there are no facts present upon which the three-year statute of limitations applicable to willful violations could apply. Consequently, the two-year statute of limitations

---

[12] Similarly, JHH's compliance with the Americans with Disabilities Act ("ADA") provides further support showing that Plaintiff has not and cannot make the necessary showing of willfulness to entitle her to the privilege of the three-year statute of limitations. The ADA permits employers such as JHH to ask an employee like Plaintiff for additional documentation regarding treatment when the employee seeks to return to work after being on leave for a medical condition. 29 C.F.R. § 1630.14. When Plaintiff wanted to return to duty, JHH required Plaintiff to execute the Disclosure so it could contact her doctor, as she herself alleges. JHH uses the form as part of its legitimate, uniformly applied process and procedure for employees returning to work after leave for a medical condition. Therefore, when JHH required Plaintiff to execute the Disclosure, it acted permissibly. Thus, under the ADA, just like under the FMLA, JHH did not engage in knowing or reckless conduct in violation of Plaintiff's rights.

applies to Counts Eight and Nine. Pursuant to the two-year statute of limitations, since Plaintiff did not timely file her claim, the Court should dismiss with prejudice Counts Eight and Nine for failure to state a claim.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant The Johns Hopkins Hospital respectfully requests that the Court grant its Motion and dismiss each of Plaintiff's claims in her Amended Complaint.