**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SHARAE A. BROWN** | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *Civil Action No.: 1:13-cv-03258 RDB |
| | * |
| **JOHNS HOPKINS HOSPITAL** | * |
| | * |
| Defendant. | * |
| | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Plaintiff, through her undersigned counsel, hereby submits the following memorandum in response to Defendant's Motion to Dismiss. Plaintiff timely filed her Opposition to Motion to Dismiss on December 26, 2013, and hereby amends the Opposition to include this memorandum. This memorandum fully incorporates and refers to the Amended Complaint and to the accompanying Opposition to Motion to Dismiss. For the reasons stated below, this Court must DENY Defendant's Motion to Dismiss in its entirety.

## STANDARD OF REVIEW

"Fed R. Civ. P. 12(b)(6) permits the court, upon a motion of the Defendant to dismiss all or part of a Plaintiff's cause of action for failure to state a claim upon which relief can be granted. The court must not grant such a motion, however, unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Garrison v. R.H. Barringer,* 152 F. Supp. 2d 858 (D. Md. 2001) (citing *Conley v. Gibson*, 355 U.S. 41 45-46, 2L. Ed. 2d 80, 78 S. Ct. 99 (1957) and *Mylan Labs., Inc. v. Matgkari*, 7 F.3d

1130, 1134 (4th Cir. 1993).  "In making this determination, the court should construe the compliant in the light most favorable to the Plaintiff and must accept all of the Plaintiff's well-pleaded allegations as true." *Mylan Labs*., 7 F.3d at 1134.

For a Plaintiff to survive a motion to dismiss, the Federal Rules do not require a claimant to set out in detail all the facts upon which he bases his claim.  To the contrary, all the Federal Rules of Civil Procedure require is a short and plain statement of the claim that will give the Defendant fair notice of what the Plaintiff's claims is and the grounds upon which it rests. *Conley*, 355 U.S at 47.  The Fourth Circuit has stated that under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.  Garrison, 152 F. Supp. 2d at 859, citing *Wolman v. Tose*, 467 F.2d 29, 33 (4th Cir. 1972).

 Under Fed. R. Civ. P. 8(a) (2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. When ruling on such a motion, the court must accept the well-pled allegations of the complaint as true and construe the facts and reasonable inferences derived there from in the light most favorable to the plaintiff. However, the court need not accept the legal conclusions drawn from the facts, and the court need not accept as true unwarranted inferences, unreasonable conclusions or arguments.

## ARGUMENT

**I.      Plaintiff Has Stated a Valid Claim of Retaliation For Which Relief May Be Granted**.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to retaliate against an employee for engaging in protected EEO activity.  To demonstrate discriminatory retaliation, a plaintiff must first establish a *prima facie* case of discrimination:  (1) that he/she engaged in protected EEO activity; (2) that the defendant took adverse action against the plaintiff; and (3) that there is a causal connection between the protected EEO activity and adverse action.  *E.g., Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).  The plaintiff bears the burden of proof by the preponderance of the evidence.  Upon establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  The plaintiff then bears the burden of proving by the preponderance of the evidence that the defendant's proffered reason is a pretext for discrimination.

Regarding the second *prima facie* element, the plaintiff needs to only demonstrate that the adverse action was material enough to dissuade a reasonable worker in the plaintiff's position from making or supporting a charge of discrimination.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006).  It is not necessary to demonstrate that the adverse action affected a term, condition, or privilege of the plaintiff's employment.  *Id.* at 2412-13.

Regarding the third *prima facie* element, temporal proximity between the adverse action and protected activity may establish a causal connection.  *Lettieri*, 478 F.3d at 650.  But even when the plaintiff is unable to establish temporal proximity between the adverse action and protected activity, the court may nonetheless look to the intervening period between the protected EEO activity and subsequent adverse action for evidence of retaliatory animus.  *Id.* at

650.  Specifically, evidence of recurring retaliatory animus during the intervening period may establish a causal connection.  *Id.* at 650 (stripping of job responsibilities, arrangements for the elimination of plaintiff's position, and subsequent termination during seven month intervening period sufficient to establish causal connection).

A.     **Defendant's continuous and repeated denial to Plaintiff of training necessary for promotion to a Lab Tech II, which began approximately one month after Plaintiff first complained of discrimination, constitutes unlawful retaliation**.

Regarding the first element, Plaintiff first engaged in protected EEO activity in January of 2010, when she complained to her second-line supervisor, Lydia Nelson, that Mr. Nguyen's denial of promotion to a full-time position was discriminatory based on her race and gender. Regarding the second *prima facie* element, Mr. Nguyen subsequently took adverse action against Plaintiff by repeatedly and continuously denying her requests for training that was necessary for promotion to a Lab Tech II position, starting from February of 2010 until approximately February 4, 2011, when Plaintiff went on FMLA leave and was subsequently barred from returning to work.  Such denials of training would dissuade a reasonable worker in Plaintiff's position from further pursuing protected EEO activity because but for her EEO complaint to Ms. Nelson, Plaintiff would have received such training and promotion.

Regarding the third *prima facie* element, it is true that there is tenuous temporal proximity between Plaintiff's January of 2010 EEO activity and the first instance of adverse action that is actionable (denial of training on or after April 15, 2010, which is 300 days prior to Plaintiff's February 15, 2011 filing of her EEO charge).  Nonetheless, Plaintiff has sufficiently alleged a causal connection by alleging facts demonstrating a recurring retaliatory animus in the intervening period between her initial EEO complaint and April 15, 2010.  Specifically, Mr. Nguyen learned of Plaintiff's initial EEO complaint when, in early February of 2010, he had to reverse his decision to deny Plaintiff a full-time position as a result of Plaintiff's EEO complaint

to Ms. Nelson.  Am. Compl. ¶ 9.  Mr. Nguyen subsequently took adverse action against Plaintiff in February of 2010 by standing her before five of her colleagues and reprimanding her for notifying her colleague to check his work bin for a specimen.  Am. Compl ¶ 10.  Mr. Nguyen's action was an obvious and blatant attempt to punish Plaintiff for reporting race and gender discrimination to Ms. Nelson, and to shame and humiliate Plaintiff into abstaining from pursuing further EEO activity.  In addition, it is clear that Mr. Nguyen issued the reprimand to later claim that Plaintiff was "unqualified" for any further promotion, in case Plaintiff issued another EEO complaint of discriminatory non-selection.

Moreover, in February of 2010, Mr. Nguyen began denying Plaintiff's requests for training for promotion, and instead provided such training to employees who had far less lab tech experience than Plaintiff had.  Am. Compl. ¶ 11.  Such adverse activity extended well past April 15, 2010.  Further, Mr. Nguyen had demonstrated a continuous pattern of denying Plaintiff opportunities for promotion, as he had done by denying her a full-time position approximately one month earlier.  Am. Compl. ¶ 9, 11.  Unfortunately for Plaintiff, Ms. Nelson did not reverse Mr. Nguyen's decisions to deny her training as she had done with his decision to deny Plaintiff a full-time position.  Am. Compl ¶ 11.

It is thus clear that Plaintiff has established a causal nexus between her first EEO complaint and the first actionable instance of adverse action.  The approximately three month intervening period is much shorter than the seven month intervening period in *Lettieri*, which the court held to be sufficient to establish a causal nexus.  Moreover, the subsequent adverse activity began occurring almost immediately after Plaintiff first complained of discrimination, and occurred repeatedly during the three-month intervening period.  In addition, the adverse activity during the intervening period bore a similar quality:  Mr. Nguyen took steps to prevent Plaintiff

from being promoted. Because Plaintiff has sufficiently pleaded a *prima facie* case of retaliation with respect to denial of training and promotion, her claim of retaliation must be upheld.

Defendant argues that Plaintiff's claim of retaliation must be dismissed because Plaintiff cannot establish a causal link between the repeated denials of promotion and Plaintiff's January 3, 2011 complaint of discrimination to Doris Pendergrass, Human Resources manager, which occurred after Mr. Nguyen began denying training. Motion to Dismiss Memorandum at 7. Defendant, however, completely ignores Plaintiff's January 2010 discrimination complaint to Ms. Nelson, which is clearly stated in paragraph nine of the amended complaint and, for reasons stated above, establishes a causal connection.

Defendant also argues that Plaintiff has not sufficiently alleged adverse action because, according to Defendant, Plaintiff did not agree with Ms. Pendergrass's findings that no discrimination occurred after Ms. Pendergrass told Plaintiff that she had conducted an investigation and took appropriate action based on the findings. Motion to Dismiss Memorandum at 11. Defendant implies that Ms. Pendergrass conducted a credible investigation and took appropriate action. In doing so, Defendant has taken enormous liberty with the allegations in the pleadings. Paragraph 14 of the amended complaint clearly states that Ms. Pendergrass only *claimed* to have investigated Plaintiff's discrimination complaint not in an effort to prevent discrimination, but in an effort to downplay Mr. Nguyen and Allan Salazar's actions. As a result, there were numerous flaws with Ms. Pendergrass's so-called "findings" that HR never adequately addressed, causing Plaintiff to continue to complain of discrimination and eventually file an EEOC charge. Only more than a month after first complaining of discrimination to HR, and only days after filing a charge with the EEOC, Plaintiff was effectively terminated. Defendant makes no explanation as to how Ms. Pendergrass's claims

negate any pleading of adverse action, for the simple reason that no such explanation can be made.

Because Defendant has outright ignored the content of the pleadings, Defendant has failed to make any credible argument in support of its motion to dismiss. Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claim must be DENIED.

      **B.**    **<u>Defendant's prohibition of Plaintiff from returning to work, attempts to coerce Plaintiff to divulge her medical records to numerous parties for undisclosed purposes, and formal termination of Plaintiff constitute unlawful retaliation</u>**.

Regarding the first *prima facie* element, Plaintiff engaged in protected EEO activity when she complained about race and gender discrimination to Ms. Pendergrass on January 3, 2011 and January 19, 2011; when Plaintiff complained about race and gender discrimination to Ms. Pendergrass, Ms. Nelson, and James Abrams of HR on February 3, 2011 and notified them that she intended to file an EEOC charge; and when Plaintiff filed a charge of discrimination with the EEOC on February 15, 2011. Am. Compl. ¶¶ 13-15.

Regarding the second *prima facie* element, Plaintiff suffered adverse action when Defendant effectively terminated her on February 16, 2011 by prohibiting her from returning to work and placing her on a so-called "leave of absence" when she refused to sign the Release and Disclosure forms, and when Defendant formally terminated her effective April 28, 2011. Am. Compl. ¶¶ 17-19. Denial of work, attempts to coerce disclosure of medical records to numerous entities for undisclosed reasons, and termination would deter reasonable worker in Plaintiff's position from pursuing further EEO activity. *See Dulaney v. Packaging Corp. of America*, 673 F.3d 323, 331-32 (4th Cir. 2012) (tangible employment action existed when supervisor made plaintiff choose between severance and outright termination, escorted plaintiff from premises and took her key, and subsequently issued her a letter stating that she had not been terminated).

Regarding the third *prima facie* element, Plaintiff has sufficiently pleaded a causal connection by establishing a temporal nexus. Defendant attempted to coerce Plaintiff into signing the Release and Disclosure forms and prohibited her from returning to work less than two weeks after she informed HR and Ms. Nelson that she would be filing an EEOC charge, and only one day after she filed an EEOC charge. Am. Compl ¶¶ 17-18. It is thus apparent that Defendant retaliated against Plaintiff for filing her EEOC charge while she was on FMLA leave by prohibiting her from returning from leave. Moreover, the Disclosure form stated Defendant's counsel and regulatory agencies dealing with employment complaints, in addition to other named and unnamed parties, may gain access to Plaintiff's medical records. Am. Compl. ¶ 17. It would be of no surprise if Defendant wished to disclose such records in anticipation that Plaintiff would file a discrimination suit, rather than attempting to obtain such records through a long and onerous discovery process. Thus it is clear that there is a causal connection between Plaintiff's protected EEO activity and the subsequent adverse action. Accordingly, Plaintiff has sufficiently stated a valid claim of retaliation.

Defendant argues that Plaintiff did not establish an adverse action by arguing that her failure to return to work was tantamount to a voluntary resignation. Motion to Dismiss Memorandum at 14-15. In doing so, Defendant has failed to cite any legal authority stating that an imposed prohibition on returning to work is voluntary. *See id.* Rather, Defendant relies on the torturous and awkward reasoning that Plaintiff voluntarily chose to not return to work by refusing to sign the Release and Disclosure forms, resulting in her termination. *See id.* This argument fails on its face, however, because Defendant instructed Plaintiff to not return to work, and conditioned the restoration of her job on her authorizing the disclosure of her medical

records to numerous parties for undisclosed purposes.[1]  *See* Am. Compl. ¶¶ 17-19.  Therefore, even though Defendant issued a letter to Plaintiff stating that she had been put on leave after prohibiting her return to work, Defendant nonetheless subjected Plaintiff to a tangible employment action and thus adverse action.  *See Dulaney*, 673 F.3d at 331-32 (4th Cir. 2012) (tangible employment action existed when supervisor made plaintiff choose between severance and outright termination, escorted plaintiff from premises and took her key, and subsequently issued her a letter stating that she had not been terminated).  Defendant, moreover, failed to provide any explanation as to why such disclosures were necessary for her to return to work.[2]  Thus Defendant has failed to provide any argument in support of its motion to dismiss Plaintiff's claim of retaliation.  Accordingly, Defendant's motion to dismiss must be denied.

## II.  Plaintiff Has Stated Viable Claims of Race and Gender Discrimination.

In order to state a viable claim of race and gender discrimination under Title VII, Plaintiff must demonstrate that (1) she is a member of a protected class, (2) she was meeting the legitimate expectations of the employer, (3) she suffered adverse action, and (4) a similarly situated employee outside of her protected class was treated more favorably.  In this case, Plaintiff alleges two types of adverse action that constituted both race and gender discrimination: when Mr. Nguyen reprimanded her in February of 2010, and Mr. Nguyen's repeated and continuous denials of her requests for training and promotion.

---

[1]  In her second amended complaint, for which a motion for leave to amend is pending, Plaintiff alleges that on March 3, 2011 – approximately seven (7) weeks before Plaintiff was formally terminated - Defendant informed the Maryland Department of Labor, Licensing and Regulation that Plaintiff had been discharged.  Second Am. Compl. ¶ 19.  This allegation further demonstrates adverse action against Plaintiff, and thoroughly defeats Defendant's claim that Plaintiff voluntarily resigned.

[2]  As demonstrated below, Defendant's failure to restore Plaintiff's position was in violation of the Family and Medical Leave Act (FMLA).

**A.** <u>**Plaintiff's discrimination claims regarding her reprimand are sufficiently pleaded and timely**</u>.

   **i.** <u>**Plaintiff has established a *prima facie* case of race and gender based disparate treatment.**</u>

Plaintiff has established a *prima facie* case of race and gender discrimination with respect to Mr. Nguyen staging her before five of her colleagues and reprimanding her. Plaintiff, an African-American woman, had been meeting the legitimate expectations of her employer, and had received a number of commendations for her good work. Am. Compl. ¶ 8. Mr. Nguyen's reprimand, which was placed in her file and in effect for one year, was a disciplinary action amounting to an adverse action because it affected the terms, conditions, and privileges of her employment.

Regarding the fourth element, Plaintiff has alleged Allen Salazar, who is an Asian, Filipino male, as a similarly situated comparator. To establish a similarly situated comparator, Plaintiff must show that she and the comparator "dealt with the same supervisor, were subject to the same standards and … engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, No. 09-1604 (4th Cir. July 6, 2010) (unpublished opinion) (internal citations omitted). In this case, Mr. Nguyen was the direct supervisor of both Plaintiff and Mr. Salazar. Each engaged in the same conduct of complaining to Mr. Nguyen about misconduct by the other person: Mr. Salazar complained about Plaintiff informing him of a stat specimen in his work bin, and Plaintiff complained in November of 2010 about Mr. Salazar's harassment and assault against her. Am. Compl. ¶ 10, 12. Yet Mr. Nguyen took severe and humiliating action against Plaintiff but did not discipline Mr. Salazar or follow up with Plaintiff's complaint. *Id.* The fact that Mr. Salazar complained about Plaintiff performing her

duties, and not actual misconduct, does not distinguish their conduct Defendant's subsequent action. In fact, such difference further highlights Defendant's discriminatory treatment of Plaintiff. Thus Plaintiff has established a *prima facie* case of disparate treatment.

### ii. Plaintiff's claims are timely.

Plaintiff's cause of action for disparate treatment fall within 300 days of the filing of her first EEOC charge on February 15, 2011. For a civil rights claim, the statute of limitations begins to run once the plaintiff knows or has reason to know of the injury that gives rise to the claim. *A Society Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). Under the continuing violation doctrine, a violation does not occur in one discrete act, but in a series of acts. *Id.* at 348. When there is a continuing violation, the statute of limitations begins to run at the last incident, but acts occurring outside of the statutory limitations period are actionable. *Id.* at 348.

In this case, the discipline against Plaintiff is timely for two separate reasons, either of which establishes that the discipline is actionable. First, although Plaintiff's reprimand occurred outside the statutory limitations period, the illegal conduct continued to occur when Plaintiff reported Mr. Salazar to Mr. Nguyen in November of 2010, but no action was taken. Mr. Nguyen's failure to discipline or investigate Mr. Salazar was a similar act that gave rise to the fourth element of Plaintiff's *prima facie* case, which was the establishment of a similarly situated comparator who was treated more favorably. Indeed, it was impossible for Plaintiff to have known that the disciplinary action against her was discriminatory until Mr. Nguyen failed to take action regarding her complaint against Mr. Salazar. Once it became apparent that Mr. Nguyen would take no action regarding her complaint, Plaintiff lodged a discrimination complaint with Ms. Pendergrass, citing the lack of action regarding her complaint. Because the failure to take

action occurred within the statutory limitations period, Plaintiff's reprimand is also timely.

Second, Plaintiff's reprimand was part of a series of continuing acts by Mr. Salazar constituting race and gender-based harassment. As demonstrated below, Mr. Salazar inflicted a hostile work environment against Plaintiff through a series of acts. In addition to hurling degrading and discriminatory terms such as "fucker" at Plaintiff, Mr. Salazar also falsely reported Plaintiff for misconduct. Am. Compl. ¶ 12. This harassing conduct directly led to the tangible employment action of discipline. Because the last of Mr. Salazar's hostile conduct toward Plaintiff occurred in November of 2010, within the statutory period, Plaintiff's reprimand is also timely. Accordingly, this Court must deny Defendant's motion to dismiss Plaintiff's claims of disparate treatment.

**B. Plaintiff has moved to amend the complaint, in part to include a similarly situated comparator regarding her failure to provide training claim.**

Although Plaintiff did not include in her first amended complaint allegations of a similarly situated comparator regarding her claim that Defendant repeatedly denied her requests for training and promotion, Plaintiff immediately and expeditiously moved to amend the complaint in part to allege a comparator. In her pending second amended complaint, Plaintiff alleges that Mr. Nguyen provided Jason Gonzales, a Hispanic male Lab Tech I, with training necessary for promotion to Lab Tech II but had repeatedly denied Plaintiff the same training. *See* Second Am. Compl. ¶ 11. Plaintiff's motion for leave to amend should be granted because it does not prejudice Defendant, was done in good faith, and is clearly pertinent in supporting her claims. Accordingly, Defendant's motion to dismiss the above claim should be denied as moot.

**III. Plaintiff's Claims of Race and Sex-Based Harassment Are Valid.**

Plaintiff alleges that Mr. Salazar's threatening and abusive behavior, and management's failure to take any action in response to Plaintiff's complaints, constitute sexual and race-based

harassment in violation of Title VII.  Plaintiff may establish racial or sexual harassment by demonstrating that the offending conduct (1) was unwelcome; (2) was based on her sex/race; (3) was sufficiently severe or pervasive to create a hostile work environment; and (4) was imputable to the employer.  *Ocheltree v. Scallon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In this case, Plaintiff did not welcome Mr. Salazar's offensive comments and violent and intimidating behavior, and complained repeatedly to Mr. Nguyen.  Am. Compl. ¶ 12.  When Mr. Nguyen failed to take responsive action, Plaintiff brought the abusive conduct to the attention of Ms. Pendergrass.  Am. Comp. ¶ 13.  Thus Plaintiff has established the first element of harassment.

Regarding the second element, Mr. Salazar's stream of abusive behavior was clearly based on Plaintiff's gender and race.  For instance, Mr. Salazar called Plaintiff a "fucker," which Plaintiff reasonably understood to be a sexually graphic description of her being a promiscuous woman.  Mr. Salazar then attempted to physically block and threaten Plaintiff from joining a party with her co-workers, stating that "this is not for everyone," but did not attempt to restrict any males or non-African-Americans from joining the party.  Am. Compl. ¶ 12.  Moreover, Mr. Salazar falsely accused Plaintiff of improper conduct, resulting in a one-year disciplinary reprimand, but did not falsely accuse any non-African-Americans or males of improper conduct to Mr. Nguyen.  Am. Compl. ¶ 10.  Thus it is clear that Mr. Salazar was singling out Plaintiff for abusive treatment based on her race and sex.

Regarding the third element, Plaintiff has demonstrated that the abusive conduct was sufficient or pervasive enough to create a hostile work environment.  To be actionable, racial/sexual harassment must be objectively hostile and abusive, and the victim must subjectively perceive it as such.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  The Fourth

Circuit has set forth criteria regarding the objectivity prong:

> There is no mathematically precise test for determining if an environment is objective hostile or abusive. Instead, the objective severity of harassment should be judged from the perspective from a reasonable person in the plaintiff's position, considering all the circumstances. These circumstances include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. This inquiry also requires careful consideration of the social context in which particular behavior occur and is experienced by its target. Conduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another.

*EEOC v. Fairbrook Medical Clinic*, No. 09-1609 at *12 (4th Cir. June 18, 2010) (internal quotes and citations omitted).

In this case, Plaintiff has satisfied the subjective prong, evidenced by the fact that she complained to Mr. Nguyen and Ms. Pendergrass numerous times of Mr. Salazar's abusive conduct. Plaintiff has also satisfied the objective prong. Mr. Salazar's hostile conduct occurred mostly, though not entirely, in November of 2010. Within this short timeframe, Mr. Salazar frequently subjected Plaintiff to numerous threats and hostile acts, such as pointing his finger and shouting at Plaintiff "you need to learn your manners," and physically attempting to block her entrance to a work party while calling her a "fucker" and "shithead." Am. Compl. ¶ 12. Mr. Salazar's conduct was so severe and physically threatening that it amounted to assault. Mr. Salazar's hostile and abusive conduct interfered with Plaintiff's ability to perform her work duties by causing Plaintiff, who was concerned and fearful for her safety, to complain to Mr. Nguyen and Ms. Pendergrass repeatedly, but to no avail, causing Plaintiff such severe emotional and mental anxiety that she had to take FMLA leave for approximately two weeks. Am. Compl. ¶¶ 12-14. Mr. Salazar's abusive conduct was completely unacceptable within the work environment; in fact, a number of co-workers had to protect Plaintiff and insist that Mr. Salazar stop threatening her from attending the party. Am. Compl. ¶ 12. Thus Plaintiff has clearly

established the creation and existence of a hostile work environment.

Regarding the fourth element, in order for a tangible employment action to be actionable, plaintiff must only demonstrate some nexus between the harassment and tangible employment action. *Dulaney,* 673 F.3d at 332-33. It is only necessary to demonstrate that the harasser set into motion events leading to the tangible employment action; it is not necessary to show that the harasser implemented the action. *Id.* at 332-33. In this case, Mr. Salazar's conduct was imputable to the employer for three reasons. First, without conduct any investigation, Mr. Nguyen disciplined and humiliated Plaintiff in front of her colleagues based on Mr. Salazar's false allegation of misconduct. Am. Compl. ¶ 10. This amounted to a tangible employment action in connection to the harassing behavior. Second, Plaintiff repeatedly and consistently complained to Mr. Nguyen and Ms. Pendergrass about the hostile conduct, but no action was taken to investigate, discipline Mr. Salazar, or to protect Plaintiff from physical harm. Am. Compl. ¶¶ 12-13. Third, Plaintiff's complaints of Mr. Salazar's discriminatory conduct set into motion events leading to Defendant's retaliation against Plaintiff by prohibiting her from returning from leave and then formally terminating her. Am. Compl. ¶¶ 17-19.

Because Plaintiff has conclusively shown that she has stated valid claims of race and sex harassment, Defendant's motion to dismiss these claims must be denied.

**IV.**     **Plaintiff Has Stated a Valid Claim of Negligent Hiring, Supervision, and Retention**.

Plaintiff has alleged that Defendant was negligent in its hiring, supervision, and retention of Mr. Salazar by failing to take action with respect to Mr. Salazar's abusive and hostile behavior to Plaintiff. For the following reasons, Defendant's motion to dismiss this claim must be denied.

## A. <u>Plaintiff has sufficiently pleaded each element of the claim</u>.

In order to state a claim of negligent hiring, supervision, and retention, Plaintiff must show that (1) a co-worker's tortious conduct caused her injury; (2) that the employer knew or should have known by diligence and reasonable exercise of care that the co-worker was capable of inflicting such injury; (3) that the employer failed to use proper care in hiring, supervising, and retaining the co-worker; and (4) that the breach of duty was the proximate cause of Plaintiff's injury. *Bryant v. Better Bus. Bureau,* 923 F. Supp. 720, 751 (D. Md. 1996).

In this case, Plaintiff has sufficiently pleaded all four elements. First, Mr. Salazar assaulted Plaintiff, causing her emotional and mental anxiety eventually causing her to take FMLA leave. Am. Compl. ¶ 15. Second, the employer learned of the tortious conduct when Plaintiff repeatedly complained to Mr. Nguyen and Ms. Pendergrass. Third, Mr. Nguyen and Ms. Pendergrass repeatedly ignored Plaintiff's pleas for them to take action. Fourth, such failure to act resulted in Plaintiff being continuously subjected to Mr. Salazar's assaults and physical intimidation, resulting in her FMLA leave. Thus Plaintiff has stated a valid claim of negligence.

In its motion to dismiss, Defendant claims that Plaintiff failed to allege any facts to support her negligence claim. *See* Motion to Dismiss at 24-26. However, Defendant fails to note with any particularity any defects in the complaint, for the simple reason that Defendant cannot do so. Rather, Defendant relies entirely on a general argument regarding the pleading standards under *Twombly* and *Iqbal*, and bald, conclusory statements such as "Plaintiff has also failed to plead facts showing the required element of causation because she has not shown that JHH has a duty." *See* Motion to Dismiss Memorandum at 24-26. These vague, generic arguments fall well short of pointing out any deficiencies in the complaint. Accordingly, Defendant's motion to dismiss the negligence claim must be denied.

**B.** **Defendant cannot rely on a statutory preemption argument based on the Maryland Worker's Compensation Act (MWCA)**.

In arguing that the MWCA preempts Plaintiff's common law negligence claim, Defendant complete ignores the Maryland Court of Appeals' decision in *Ruffin Hotel Corp. of Md. v. Gasper*, 17 A.3d 676 (Md. 2011). In *Ruffin Hotel Corp.*, the plaintiff repeatedly complained to her supervisor after a co-worker sexually assaulted her. *Id.* at 679. The supervisor fired but then rehired the co-worker and ultimately terminated the plaintiff for "poor attitude" and "harassing behavior" toward her subordinates. *Id.* at 680-81. The plaintiff subsequently sued the employer for negligent hiring and retention and for sex discrimination under Maryland antidiscrimination statutes. *Id.* at 676. The defendant argued in part that the MWCA preempted the negligent hiring and retention claim. *Id.* at 689. The Court of Appeals rejected the defendant's argument, holding that the MWCA does not preempt a negligent hiring and retention claim:

> Although [*Newman v. Giant Food, Inc.*, 187 F.Supp.2d 524 (D.Md.2002)] also involved a negligent hiring/retention claim, we are not surprised that, as the Court of Special Appeals noted, "[the Petitioner] has referred us to no **Maryland** authority, and we have found none, to support its claim of preemption under the MWCA." 183 Md. App. at 232, 960 A.2d at 1240. (Emphasis supplied). We reject the proposition that the General Assembly intended that the Workers' Compensation Commission is the exclusive forum in which a negligent hiring/retention claim must be litigated whenever such a claim is asserted by an employee against his or her employer as a result of intentional and unlawful misconduct of a fellow employee. A contrary conclusion would be unreasonable in the extreme.

*Id.* at 689.

In this case, because Defendant's argument involves interpretations only of Maryland laws, Plaintiff respectfully requests this Court to defer to the Maryland Court of Appeal's decision and deny Defendant's Motion to Dismiss Count Seven.

II.     **Defendant's Motion to Dismiss Counts Eight and Nine Should Be Denied Because Plaintiff Has Pled Sufficient Facts to Establish that Her FMLA Claim is Timely.**

Defendant argues that Count Eight and Nine should be dismissed because a two-year statutory deadline under the FMLA applies, and Plaintiff has failed to meet that deadline by filing her original complaint after April 29, 2013.  Defendant further argues that a three-year statutory deadline does not apply because Plaintiff has not sufficiently pled that Defendant willfully violated the FMLA.  Motion to Dismiss Memorandum at 7, 9.  However, Plaintiff has sufficiently pled a willful violation of the FMLA by alleging that Defendant prohibited her from returning to work and subsequently terminated her when she refused to sign documentation for release and disclosure of her medical information.  *See* Am. Compl. ¶ 70.

A.      **Plaintiff has sufficiently pleaded a *prima facie* case of willful and unlawful FMLA interference**.

In order to establish a *prima facie* case of unlawful  FMLA interference, Plaintiff must allege that:  (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.  *Rodriguez v. Smithfield Packing Co.*, *Inc.*, 545 F. Supp. 2d 508 (D. Md. 2008).  Defendant in this case does not contest the first two elements.  Nonetheless, Plaintiff has satisfied all elements of a *prima facie* case.

i.      **Plaintiff was entitled to leave under the FMLA**.

In order to qualify for leave under the FMLA, Plaintiff may show that she was afflicted with an FMLA-qualifying condition.  *Rhoads v. Federal Deposit Ins. Corp.,* 257 F. 3d 373, 384 (4th Cir. 2001).  Plaintiff may meet this standard by demonstrating that her leave was due to a "serious health condition."  29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.114(a).  A serious

health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves[:] (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.114(a). "Continuing treatment by a health care provider" is defined as "[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) Treatment two or more times by a health care provider... or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(2)(i).

In this case, Plaintiff has met the qualifying standard for FMLA leave by demonstrating that she had a serious health condition. For eight consecutive days (February 8, 2011 to February 16, 2011), Plaintiff was totally incapacitated and received continuous medical treatment from her physician. Thus Plaintiff received "[c]ontinuing treatment by a health care provider" by receiving "[t]reatment two or more times by a health care provider".

> ### ii.      **Plaintiff gave Defendant adequate notice of her intention to take leave**.

In this case, Plaintiff gave adequate notice of her intention to take leave when she notified Ms. Pendergrass, Ms. Nelson, and Mr. Abrams on February 3, 2011 that she would be taking medical leave for emotion and mental anxiety and stress from February 4, 2011 to February 16, 2011. Am. Compl. ¶ 15. Thus, Plaintiff gave adequate notice beforehand of her intention to take leave.

Defendant argues that the fact that Plaintiff may not have used the term "FMLA" in describing the nature of his leave disqualifies her from FMLA protection. Motion to Dismiss at 28-29. However, Defendant's position clearly contradicts the text of the FMLA and Fourth Circuit case law. Plaintiff need only to allege that she informed Defendant of (1) such facts as to make the employer aware that the employee needed leave due to a serious health condition; and (2) "the anticipated timing and duration of the leave." *See* 29 C.F.R. § 825.302(c). "Where the need for leave was not foreseeable, this notice should be given as soon as practicable under the facts and circumstances of the particular case, with an expectation that notice will occur within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Rodriguez*, 545 F. Supp. at 511 (quoting 29 C.F.R. § 825.303(a)) (internal quotes omitted). The Fourth Circuit elaborated on the nature of the notice required:

> Case law and federal regulations make it clear, however, that employees do not need to invoke the FMLA in order to benefit from its protections. The regulations do not require the employee to "expressly assert rights under the FMLA or even mention the FMLA"; instead, the employee "may only state that leave is needed for an expected birth or adoption, for example." 29 C.F.R. § 825.302(c). After the employee makes such a statement, the responsibility falls on the employer to inquire further about whether the employee is seeking FMLA leave. I d. "In providing notice, the employee need not use any magic words." Sarnowski, 510 F.3d at 402.

*Dotson v. Pfizer, Inc.*, No. 07-1979 at *11 (4th Cir. March 4, 2009).

In this case, it was unnecessary for Plaintiff to expressly state the magic word "FMLA". Rather, Plaintiff timely informed Defendant that she was taking medical leave for a specific period of time. Upon Defendant's request, Plaintiff provided certification from her physician that her leave was due to a serious medical condition and that she had sought continuous and medical treatment during her leave. Am. Compl.   15, 16. Thus Plaintiff gave Defendant

adequate notice that her leave was for FMLA purposes.

### *iii.* __Defendant willfully interfered with Plaintiff's FMLA rights by prohibiting her return from leave numerous times__.

Generally, a plaintiff must file an FMLA violation claim within two years of the last event constituting an alleged violation. 29 U.S.C. Sec. 2617(c)(1). If the alleged violation was willful, however, the plaintiff has three years from the last violation to file an FMLA claim. *Id.* Sec. 2617(c)(2). A willful violation of the FMLA occurs when the employer knew or showed reckless disregard as to whether its conduct was prohibited. *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 628 (D. Md. 2013). Intent and other states of mind may be pled generally. *Id.* For instance, in *Anusie-Howard*, the court held that plaintiff sufficiently pled a willful FMLA violation by alleging that the employer denied plaintiff leave when her husband suffered from a hernia, forcing her to use vacation and sick days and switch to part time. *Id.* The court determined that such alleged conduct showed reckless disregard of the FMLA's requirements. *Id.*

In this case, Plaintiff has sufficiently pled a willful FMLA violation. Under the FMLA Sec. 104(a)(1), an eligible employee who takes leave for the intended purpose of the leave shall be entitled, on return from leave, (A) to be restored by the employer to the position of employment held by the employee when the leave commenced, or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. As a condition of restoration under paragraph (1) for an employee who has taken leave, the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work. FMLA Sec. 104(a)(4). However, the employer may <u>not</u> require the employee to broadly release his/her medical information as a condition of job

restoration.  *See id.; see also* U.S. Dep't of Labor, Wage and Hour Division, Opinion "FMLA-108," *available at* http://www.dol.gov/whd/opinion/FMLA/prior2002/FMLA-108.htm (requirement of release of "medical information relating to and necessary to process that employee's claims" to Chief Company Doctor was unlawful.)

In this case, Plaintiff has sufficiently pleaded at least four allegations that Defendant knew or showed reckless indifference to the fact that its conduct violated the above FMLA requirements.   First, Plaintiff alleged that she provided certification from her doctor that she received treatment for a serious health condition and was released to work without restrictions. Am. Compl. ¶¶ 16,17.  Thus Plaintiff provided sufficient certification under the FMLA, which entitled Plaintiff to restoration of her position.  Second, Defendant prohibited Plaintiff from returning to work after her leave had ended, even though she was entitled to restoration, then placed her on "leave" without her knowledge and consent and subsequently terminated her.  Am. Compl. ¶¶ 18,19.  Third, Defendant conditioned Plaintiff's restoration on her authorization of release and disclosure of her medical history to numerous parties, and prohibited her from returning when she rightfully refused to do so – a clear and blatant violation of the FMLA.  Such conduct was not negligent or inadvertent because at least two entities, the Occupational Health and Safety Department and Lydia Nelson, Plaintiff's supervisor, prohibited her from returning to work, and Defendant put her on "leave" and formally discharged her afterwards.  Am. Compl. ¶¶ 17-19.  Fourth, the Release form that Defendant required Plaintiff to sign stated that it was "voluntary" for Plaintiff to sign.  Am. Compl. ¶ 17.  Thus not only was Defendant's conduct prohibited under the FMLA, but it was also inconsistent with Defendant's policy and/or practice regarding release of medical information.  This further demonstrates that Defendant's violation of the FMLA was willful and done with knowledge or reckless disregard of the FMLA.

For the above reasons, Plaintiff has sufficiently pleaded a *prima facie* case of unlawful interference with her FMLA rights, and that Defendant's conduct was a willful violation of the FMLA. Accordingly, Plaintiff is entitled to a three-year statute of limitations, which was set to expire on April 29, 2014. Thus Plaintiff's filing of the original complaint was timely, her FMLA claim is valid, and Defendant's motion to dismiss Count Eight must be denied.

### B.    Plaintiff has sufficiently pleaded a *prima facie* case of willful retaliation under the FMLA.

In order to establish a *prima facie* case of FMLA retaliation, Plaintiff must allege that: (1) she engaged in protected FMLA activity; (2) she suffered adverse action; and (3) there was a causal connection between the protected activity and adverse action. *Scott v. Sebelius*, 2013 WL 709765 at *5 (D. Md. February 25, 2013). In this case, Plaintiff engaged in protected activity by requesting and taking FMLA leave. She then suffered adverse action Defendant attempted to coerce her into broadly disclosing her medical records for undisclosed purposes, prohibited her from returning to work, and then formally discharged her. *See Dulaney v. Packaging Corp. of America*, 673 F.3d 323, 331-32 (4th Cir. 2012) (tangible employment action existed when supervisor made plaintiff choose between severance and outright termination, escorted plaintiff from premises and took her key, and subsequently issued her a letter stating that she had not been terminated). There is a causal connection between the adverse activity and prior FMLA protected activity because Plaintiff was prohibited from returning from FMLA leave, on the same day she provided her disability certification from her physician. For reasons stated above, the adverse activity was willful and unlawful. Thus Plaintiff has alleged a *prima facie* case of FMLA retaliation, and that such retaliation was willful. Accordingly, her FMLA claims are timely.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss must be DENIED in its entirety.

Respectfully Submitted,

/s/ Syed Shaun Bokhari
Syed Shaun A. Bokhari, Esquire
Federal Bar No. 30161
Rose Law Firm, LLC
200 E. Lexington Street, Suite 800
Baltimore, MD.  21202
Telephone #: 410-727-7555
Facsimile #: 443-320-0962
Email: bokhari@roselawfirm.net

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 3rd day of January 2014, the foregoing Memorandum In Support of Plaintiff's Opposition to Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

John M. Gilman, Esq.
Attorney for the Defendant

/s/ Syed Shaun Bokhari