IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHARAE A. BROWN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-3258 |
| JOHNS HOPKINS HOSPITAL, | * | |
| | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This is an employment discrimination case in which the Plaintiff Sharae Brown asserts claims against the Defendant Johns Hopkins Hospital for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and a Maryland common law claim for negligent hiring, supervision, and retention.  Presently pending is the Defendant's Motion to Dismiss the Amended Complaint (ECF No. 15).  The parties' submissions have been reviewed and no hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, the Defendant's Motion to Dismiss (ECF No. 15) is GRANTED IN PART and DENIED IN PART.  Specifically, the Defendant's Motion is GRANTED as to Counts Four, Five, Six, Seven, Eight & Nine.  The Defendant's Motion is DENIED as to the Plaintiff's Title VII claims in Count One for Retaliation, Count Two for Gender Discrimination, and Count Three for Racial Discrimination.

BACKGROUND

For purposes of a motion to dismiss, this Court accepts as true the well-pled, non-conclusory factual allegations in a plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). The Plaintiff is a female, African-American, United States citizen. Second Am. Compl. ¶ 2, ECF No. 17-2. Beginning in 2008, she was employed by Defendant Johns Hopkins Hospital (the "Hospital") in the pathology department. *Id.* ¶ 7. She worked as a part-time "Lab Tech I" whose duties included processing urine specimens. *Id.* Although she was required to work only twenty-four hours per week, she often worked longer hours to assist her colleagues. *Id.*

During the Plaintiff's employment, approximately ninety percent of the individuals on the pathology department staff were of Asian race and Philippine national origin. *Id.* ¶ 7. Her direct supervisor was Keith Nguyen, an individual of Vietnamese national origin. *Id.* The manager of the department was Lydia Nelson, a Caucasian female. *Id.*

The Plaintiff alleges that on June 17, 2009, an unidentified medical technician in the department blamed her for losing a urine specimen from the medical technician's lab station. *Id.* ¶ 8. The Plaintiff denied losing the sample and told her supervisor Nguyen that processing such specimens was not one of her job responsibilities and she was not trained to do so. *Id.* Nguyen reprimanded Brown, telling her, "Don't say it's not your job," and, "I hope I did not make a mistake in hiring you." *Id.* Despite this incident, the Plaintiff received award certificates for distinguished service, reliability, and perfect attendance, and was rated "highly proficient" in a September 7, 2009 performance review. *Id.*

Starting in July of 2009, the Plaintiff began to seek promotion to full-time employment. *Id.* ¶ 9. Nguyen, her supervisor, told the Plaintiff that he would promote her, but several months went by without her being elevated to full-time status. *Id.* In January of 2010, the Plaintiff complained to Nelson, the department manager, that Nguyen had discriminated against her on the basis of race and gender. *Id.* The Plaintiff alleges that she was promoted to full-time employment in February of 2010 as a result of her complaint. *Id.*

Also in February of 2010, medical technician Allan Salazar, an Asian male of Filipino national origin, complained that the Plaintiff "alert[ed] [him] that there was a stat specimen in the bin." *Id.* ¶ 10. In response to Salazar's complaint, Nguyen issued Brown a written "reprimand – active for one year . . . for engaging in rude or discourteous behavior." *Id.* Nguyen also verbally reprimanded the Plaintiff in front of five co-workers, including Salazar. *Id.* One of the observers questioned Nguyen as to whether he should have reprimanded Brown in front of her co-workers. *Id.* Again, the Plaintiff reported Nguyen's actions to Nelson.

After Nguyen reprimanded Brown, she requested that he train her so that she could become a "Lab Tech II." *Id.* ¶ 11. Nguyen denied her the training she sought. *Id.* She continued her studies on her own, and in November of 2010, the Plaintiff became certified as a phlebotomist, which made her eligible for promotion to Lab Tech II. She did not receive further training and was not promoted. *Id.* Also in November of 2010, Nguyen hired Jason Gonzales, a Hispanic male, instead. *Id.* ¶¶ 9, 11. Brown alleges specifically that Nguyen trained Gonzales for the Lab Tech II position even though Gonzales had only recently been hired. *Id.* ¶ 11.

3

Soon thereafter, on or about November 24, 2010, Salazar "approached Plaintiff in an aggressive and violent manner, shouted at Plaintiff, pointed his finger in Plaintiff's face, and stated 'you need to learn your manners.'" *Id.* ¶ 12. Later the same day, Salazar called Brown a "fucker." *Id.* She alleges specifically that she understood this term to refer to her as a promiscuous woman. *Id.* The Plaintiff complained to Nguyen, who said that he would talk to Salazar about the incident. *Id.* A few days later, Salazar physically blocked the door to a laboratory room where a staff party was being held and told her, "This is not for everyone." *Id.* At the urging of the individuals already in the room, Salazar moved aside to allow the Plaintiff to enter. *Id.* She told him, "Thank you," to which he responded, "Shut up, shithead!" *Id.* The Plaintiff immediately left the event and again complained to Nguyen, fearful that Salazar was becoming more violent and hostile. *Id.* Nguyen said that he would look into the incident, however, the Plaintiff alleges that he did not meet with her or other witnesses or verbally reprimand Salazar in front of co-workers, and continued to allow Salazar to work in close proximity to her. *Id.*

The Plaintiff alleges that, as a result of Nguyen's inaction, she complained to Human Resources manager Doris Pendergrass on or about January 3, 2011. *Id.* ¶ 13. The Plaintiff alleges that Pendergrass downplayed the actions of Nguyen and Salazar. *Id.* ¶ 14. Brown further alleges that Pendergrass "claimed an investigation was done," that action was taken against Salazar, and that Brown had been denied training because of staff and scheduling issues. *Id.* Pendergrass stated, "I did not find anything to suggest that anyone was singled out because of race or gender." *Id.* However, on January 19, 2011, Pendergrass told Brown that Nguyen had not contacted her or any witnesses regarding Salazar's conduct, that the

schedule would have permitted Brown to receive the requested training, and that employees who had been hired after Brown actually received Lab Tech II training. *Id.* The Plaintiff restated to Pendergrass that she believed that race and gender had motivated Nguyen's and Salazar's actions. *Id.*

On February 3, 2011, Brown informed the Human Resources Department that she intended to file a complaint with the Equal Employment Opportunity Commission. *Id.* ¶ 15. She also informed her employer that her interactions with Nguyen and Salazar had caused her to "seek medical attention for emotional stress, distress, and anxiety." *Id.* On February 4, 2011, the Plaintiff alleges that she took FMLA leave from work and visited her doctor. *Id.* ¶ 15-16. The Plaintiff alleges that her doctor gave her a disability certificate which ordered her to stay home from work from February 8th to February 16th. *Id.* She filed her EEOC charge of discrimination on February 15, 2011, alleging that Nguyen's retaliated against her by denying training and the opportunity for promotion. *Id.* ¶ 16.

The Plaintiff's doctor released her to return to work with no restrictions on February 16, 2011. *Id.* ¶ 17. When Brown contacted the Hospital to report that she was ready to return, she was told that she must first be cleared by the Occupation Health Services ("OHS") department. *Id.* The Plaintiff presented her doctor's disability certificate to the OHS, and the nurse there told her that OHS would have to confirm her treatment. The nurse instructed the Plaintiff to sign two forms:  "Authorization for Release of Health Information to Johns Hopkins Occupational Health" (the "Release form") and "Authorization for Use and/or Disclosure of Health Information of Johns Hopkins Workforce Member (Including Agency Staff) by Johns Hopkins" (the "Disclosure form").

*Id.* The Plaintiff did not wish to sign these forms because they allowed her information to be disseminated to OHS, her supervisor, regulatory agencies that handle employment complaints, and the Hospital's counsel, for unnamed purposes. *Id.* In lieu of signing the forms, she gave her written consent for Occupational Health Services to speak with her physician, but was told that such consent was insufficient and she was required to execute the Release and Disclosure forms before she could return to work. The Plaintiff argues that this was improper because the Release form states that it is "voluntary." *Id.* Then, on February 18, 2011, the Plaintiff returned to the OHS with written consent to speak with her physician. *Id.* ¶ 18. The OHS again informed the Plaintiff that it would not contact her doctor until she signed the Release and Disclosure forms. *Id.* Nelson, the Plaintiff's supervisor, also confirmed that without approval from the Occupational Health Services department, she could not return to work. *Id.* The Plaintiff then left the Hospital on February 18, 2011 with the understanding that she had been terminated. *Id.*

The Plaintiff filed for unemployment benefits with the Maryland Department of Labor, Licensing and Regulation ("DLLR") on February 23, 2011. *Id.* ¶ 19. On March 2, 2011, the Hospital informed the DLLR that the Plaintiff had been discharged, without elaboration. *Id.* Then, on or about March 15, 2011, the Plaintiff received a letter from the Hospital stating that she was on a leave of absence from March 1 to April 28, 2011, and that if her position was filled during that time, she would have to reapply for the job. *Id.* She was awarded unemployment benefits and the Hospital appealed. *Id.* At the appeal hearing on April 13, 2011, the DLLR upheld the initial ruling awarding the Plaintiff benefits. *Id.* The DLLR concluded on appeal that Brown had not been discharged for misconduct, but

because she had refused to "execute a general release of her medical records for undisclosed purposes." *Id.*

On May 5, 2011, the Hospital sent Brown a letter stating that her period of leave had expired and that she was discharged effective April 29, 2011. *Id.* Then, on June 6, 2011, the Plaintiff amended her EEOC charge to include race discrimination, sex discrimination, and retaliation for conduct by Nguyen and Salazar subsequent to the filing of her initial EEOC complaint and for her termination by the Hospital. *Id.* The EEOC issued the Plaintiff a right to sue letter, exhausting her administrative remedies.

The Plaintiff filed suit in the Circuit Court for Baltimore City, Maryland. The Complaint (ECF No. 2) contained eight counts, including various causes of action brought pursuant to the State Government Article of the Annotated Code of Maryland as well as a claim for a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601. The Defendant removed the case to this Court on the basis of federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441. After the Defendant moved to dismiss the original Complaint (ECF No. 6), the Plaintiff filed an Amended Complaint (ECF No. 12), replacing the Maryland statutory claims with claims made pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and adding a second FMLA-related claim. In the Amended Complaint, the Plaintiff asserts the following claims: Retaliation in violation of Title VII (Count One); Disparate Treatment – Gender Discrimination in violation of Title VII (Count Two); Disparate Treatment – Race Discrimination in violation of Title VII (Count Three); Gender Harassment in violation of Title VII (Count Four); Racial Harassment in violation of Title VII (Count Five); Sex Discrimination in violation of Title VII (Count Six); Negligent Hiring,

Supervision, and Retention (Count Seven); Unlawful Interference with Medical Leave in violation the FMLA (Count Eight); and Retaliation in violation of the FMLA (Count Nine).

The Defendant then filed a Motion to Dismiss the Amended Complaint (ECF No. 15). The Plaintiff moved for leave to file a Second Amended Complaint (ECF No. 17), which contains several additional factual allegations, and filed a two-page Response in Opposition to Defendant's Motion to Dismiss the Amended Complaint (ECF No. 19). However, the Plaintiff did not file her Memorandum in Support of her Opposition (ECF No. 20), until more than a week after the briefing deadline, without seeking leave of Court. The Defendant moved to Strike (ECF No. 23) the Plaintiff's Opposition to the Motion to Dismiss the Amended Complaint. During a telephone conference, the parties agreed that the Defendant's Motion to Dismiss the original Complaint (ECF No. 6) is moot, and this Court granted the Plaintiff's Motion for Leave to File Amended Pleading (ECF No. 17) and denied as moot the Defendant's Motion to Strike Response in Opposition (ECF No. 23). *See* Letter Order of July 31, 2014, ECF No. 28. The additional factual allegations in the Plaintiff's Second Amended Complaint have been addressed in the briefing of the various Motions. Accordingly, this Court considers whether the Second Amended Complaint (ECF No. 17-2) states a claim upon which relief can be granted.

<u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits

of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483

(4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999))).

The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), articulated "[t]wo working principles" that courts

must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First,

while a court must accept as true all the factual allegations contained in the complaint, legal

conclusions drawn from those facts are not afforded such deference.  *Id.* (stating that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d

359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most

favorable to the plaintiff, we need not accept legal conclusions couched as facts or

unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks

omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for

relief." *Iqbal*, 556 U.S. at 679.  Under the plausibility standard, a complaint must contain

"more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action." *Twombly*, 550 U.S. at 555.  Although the plausibility requirement does not impose a

"probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In making this

assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

DISCUSSION

## I.   TITLE VII CLAIMS

### A.  Timeliness of Title VII Claims

Pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(e)(1), a plaintiff generally must file a discrimination charge with the Equal Employment Opportunity Commission within 180 days after the alleged unlawful employment practice. *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661 (D. Md. 2011). As this Court has previously noted, however, that limitations period is extended to 300 days in a "deferral state," "one in which state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Ford v. Berry Plastics Corp.*, No. RDB-12-0977, 2013 WL 5442355, at *7 (D. Md. Sept. 27, 2013) (quoting *Prelich*, 813 F. Supp. 2d at 661). Because Maryland, the state in which the Plaintiff was employed by the Defendant, is a deferral state, the Plaintiff was required to file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *Id.* at 661-62. In general, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Such allegations

10

can, however, be considered as background information for an incident that occurred within 300 days.  *Id.*

The Plaintiff alleges that in February of 2010 her co-worker Salazar complained to the supervisor, Nguyen, "about Plaintiff for alerting Mr. Salazar that there was a stat specimen in the bin."  Pl.'s Second Am. Compl. ¶ 10.  As a result, Nguyen issued the Plaintiff a written reprimand for "rude or discourteous behavior" and verbally upbraided her in front of five other employees.  Subsequently, in November of 2010, the Plaintiff twice reported to Nguyen that Salazar had verbally abused her.  The Plaintiff alleges that Nguyen did not reprimand Salazar or even investigate her complaints.  The Plaintiff concedes that her allegations concerning Nguyen reprimanding her for being rude to Salazar occurred more than 300 days before she filed her initial EEOC charge.  She argues, however, that when combined with Nguyen's failure to discipline Salazar when the Plaintiff reported his calling her a "fucker" and "shithead" in November of 2010, the verbal reprimand in February of 2010 is part of a continuing violation of Title VII, and therefore may be considered despite occurring before the 300-day time limit.

As the United States Court of Appeals for the Fourth Circuit has noted, "[i]n general, to establish a continuing violation, the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice. . . . In other words, if the plaintiff can show that the illegal conduct did not occur just once, but rather in a series of separate acts, and if the same alleged violation was committed at the time of each act, then the limitations period

begins anew with each violation." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (internal citations, quotation marks, and alterations omitted).

Taking all of the Plaintiff's factual allegations as true, she has alleged a continuing violation.   She alleges that Nguyen disciplined her for rude verbal behavior toward Salazar, but that Nguyen did nothing when she complained to him about Salazar's verbal abuse a few months later.   At this stage, Nguyen's alleged acts on these two occasions could be viewed not as discrete acts, but as a fixed practice that constituted the same violation of Title VII, that is, treating the Plaintiff differently than a similarly situated co-worker.   Indeed, the Plaintiff would not be able to show that she was treated disparately until another employee outside of her protected classes experienced different consequences for a complaint against him.   Her cause of action did not accrue until Salazar was allegedly treated differently than her in November of 2010.   Therefore, this Court may consider the February 2010 reprimand for purposes of Defendant's liability, *vel non*, for disparate treatment pursuant to Title VII.

In addition, the Plaintiff alleges that she was promoted to full-time status in January 2010 after complaining to her manager, Nelson.   She also alleges that she was not hired as a Lab Tech II, despite her repeated requests for the necessary training.   Instead, she alleges that Nguyen hired and trained Jason Gonzales as a Lab Tech II in November 2010, despite Gonzales's relative lack of experience and shorter tenure in the department.   The allegations regarding her January 2010 complaint and promotion to full-time employment can be considered as background information regarding her claims based on deprivation of training and failure to promote.

On a related point, the Plaintiff also argues that acts occurring outside of the 300-day window can also be considered as part of an alleged hostile work environment.  Hostile work environment claims, by their nature, involve repeated acts, and therefore the 300-day time limit applies differently.  *Morgan*, 536 U.S. at 115.  "Provided that an act contributing to the claim occurs within the filing period, the entire period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.  The Plaintiff makes several factual allegations with respect to her Title VII hostile work environment claims that occurred more than 300 days prior to her filing an EEOC charge.  As noted, the incident when Nguyen verbally chastised her in front of her co-workers occurred in February of 2010, more than 300 days before the filing of the EEOC charge.  In addition, she alleges that in June of 2009, Nguyen improperly reprimanded her for losing a urine sample.[1]  These allegations may also be considered in the context of the hostile work environment claims, even though they occurred more than 300 days before the filing of the Plaintiff's EEOC charge.

### B.  Retaliation Claim

In Count One of the Second Amended Complaint, the Plaintiff asserts a claim of retaliation in violation of Title VII.  42 U.S.C. § 2000e-3(a).  Where, as here, there is no direct evidence of discrimination, a plaintiff may rely on circumstantial evidence under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, to survive a motion to dismiss, the plaintiff must make out a prima

---

[1] The Plaintiff does not argue that the June 2009 incident should be considered in the context of her disparate treatment claims.

facie case of discrimination.[2]  To establish a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must prove that (1) she engaged in a protected activity; (2) the defendant took an adverse employment action against her; and (3) a causal nexus exists between the protected activity and the adverse employment action.  *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998).

As to the first element of a prima facie case of retaliation, opposition to an employer's policies by formal or informal complaints qualifies as protected activity.  *See, e.g.*, *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.").

With respect to the second element of the prima facie case, the Supreme Court of the United States has established that an adverse employment action is one that a "reasonable employee" would have found "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

---

[2] If a prima facie case is established, the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for its adverse employment action.  *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).  If the employer fulfills this burden of production, the burden reverts back to the plaintiff to establish that the defendant's proffered reason is pretextual and that her termination was instead motivated by discrimination.  *See id.*  Courts have emphasized that a plaintiff's "burden to demonstrate pretext 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'"  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  However, the rest of the familiar burden-shifting *McDonnell Douglas* standard is not usually implicated at the motion to dismiss stage.  *See Hart v. Lew*, 973 F. Supp. 2d 561, 584 (D. Md. 2013) ("[T]o survive a motion to dismiss, plaintiff need not *prove* anything.  Indeed, she need not even *allege* that defendant's proffered explanation is a pretext.  This, of course, is because a plaintiff, when filing her complaint, does not yet know what explanation a defendant will proffer and has not yet had the opportunity to uncover evidence of pretext [in discovery]."(emphasis in original)).

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Under that standard, adverse employment actions include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) and citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

With regard to the third element of a prima facie case of retaliation, the Supreme Court recently clarified that, unlike in the context of a status-based discrimination claim, the ultimate burden to prove a retaliation claim requires showing but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2533 (2013). Despite the burden at trial to prove that the adverse employment action would not have occurred absent the employer's unlawful retaliation, an allegation of "close temporal proximity" between protected conduct and the adverse employment action states a plausible claim as to a causal nexus. *Cf. Taylor v. Peninsula Reg'l Med. Ctr.*, ___ F. Supp. 2d ___, No. WMN-12-3794, 2014 WL 936847, at *8 (D. Md. Mar. 10, 2014) (reasoning that *Nassar* does not significantly impact analysis of causal connection based on close temporal proximity in making a prima facie case at the summary judgment stage). Moreover, at the motion to dismiss stage, a plaintiff need only plead facts that could plausibly impose liability on the defendant.

The Plaintiff alleges that the Hospital retaliated against her by continuously denying her training and promotion to Lab Tech II. She alleges that she first engaged in protected activity in January of 2010 by complaining to Nelson that Nguyen refused her promotion to full-time status. Although Brown was given a full-time position soon after in February of

2010, she alleges that upon Nguyen learning of her complaint, he took adverse action against her by denying her the training she needed to be eligible for promotion to Laboratory Technician II.  She also alleges that Nguyen reprimanded her for rude behavior toward Salazar shortly after her elevation to full time in retaliation for her complaints.

The continued failure to train and promote Brown was an adverse employment action.[3]   As to causation, the first time Nguyen allegedly refused to train her was in February of 2010, just after she complained about Nguyen and was promoted to full-time status.  This close temporal proximity is sufficient to allege causality at this early stage.  Thus, the Plaintiff has stated a claim for retaliation based on failure to train.

The Plaintiff also alleges that the Hospital discharged her in retaliation for complaining of discrimination.  Her complaints to the Human Resources department on February 3, 2011 and the filing of her charge with the EEOC on February 15, 2011 were protected activities.  The Plaintiff alleges that she took FMLA leave starting on February 4, 2011, but when she returned to the Hospital on February 16, 2011, she refused to sign the Disclosure and Release forms required to release her doctor's certification of her serious medical condition.  The Occupational Health Services department informed her that she could not return without executing the forms, and in a March 2, 2011 letter, the Hospital told her she was on a leave of absence from March 2nd until April 28th.  She was then terminated effective April 29, 2011.  When viewed against the background of the all of the

---

[3] The Plaintiff acknowledges that some of these acts of refusal are alleged to have occurred before April 15, 2010, 300 days before the filing of the EEOC charge on February 15, 2011. Under the continuing violation doctrine noted above in Part I.A of this Memorandum Opinion, the repeated refusals to train were acts of the same alleged violation that each begin the limitations period anew. *A Soc'y Without a Name*, 655 F.3d at 348.

Plaintiff's complaints to her supervisors of discrimination, the temporal proximity between the filing of her EEOC charge, the Hospital placing her on leave, and her termination is sufficiently close to make a prima facie case of causation at this early juncture.

In determining that the Plaintiff has pled a prima facie case, this Court makes no finding that she will ultimately prevail.  The Defendant represents that the Disclosure and Release forms are part of the standard protocol for an employee returning to work after medical leave.  Although Brown disagrees with the rationale behind the documents, she makes no allegation that all employees were not required to execute them for FMLA leave purposes.  Under *McDonnell Douglas*, the Defendant may be able to articulate a legitimate non-discriminatory reason for refusing to allow her to return to work, and eventually terminating her.  Indeed, the Hospital may have had no choice in the matter but to prohibit her from returning to work.  In that case, the burden would shift back to the Plaintiff to prove that the proffered explanation for her termination was pretextual.  Nevertheless, it is not the province of this Court on a motion to dismiss to resolve questions surrounding the facts or the applicability of defenses.  In sum, the Plaintiff has pled sufficient facts for her retaliation claim to proceed and the Defendant's Motion to Dismiss Count I will therefore be denied.

### C.  Disparate Treatment Claims

The Plaintiff asserts claims of disparate treatment based on gender (Count Two) and race (Count Three).  Specifically, she alleges that she was deprived of training and a promotion, and that she was reprimanded, whereas other employees who are not female or African-American were treated more favorably.

In order to establish a *prima facie* case of failure to provide training, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir. 2002); *Boyd v. Gutierrez*, No. DKC 2004-1535, 2005 WL 2653946, at *5 (D. Md. Oct. 17, 2005).   Similarly, to prove a prima facie case of discriminatory refusal to promote, a "plaintiff must prove that (1) plaintiff is a member of a protected group; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (citations omitted); *Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 534 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003).

The Plaintiff alleges that she requested promotion to a full-time position as early as July of 2009, but did not reach full-time status until February of 2010, after she complained to Nelson, the supervisor for the pathology department.   Thereafter, she requested training from Nguyen to allow her to become a Lab Tech II.   When Nguyen refused, the Plaintiff sought other training on her own and became certified as a phlebotomist in November of 2010.   This additional credential qualified her for promotion to Lab Tech II, and she alleges that she repeated her request for the promotion.   However, Jason Gonzales, a Hispanic male who is outside the Plaintiff's protected classes, was trained and hired as a Lab Tech II. Brown alleges that Gonzales received the training and the ensuing promotion despite the

fact that she was eligible, qualified, and had requested the position, and that he had been in the department for a shorter period of time.  Taking these allegations as true, the Plaintiff has sufficiently pled the elements of a prima facie case of disparate treatment for failure to provide training and refusal to promote.

The Plaintiff also alleges that she was subject to disparate disciplinary action.  A plaintiff can make a prima facie case of disparate treatment as to the terms and conditions of employment by showing (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.  *Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 533 (D. Md. 2002).   Reprimands are not adverse employment actions unless they alter the terms and conditions of employment.  *Chika*, 179 F. Supp. 2d at 587 (holding that verbal reprimands that had no impact on job performance were not adverse employment actions, but noting that a written reprimand would qualify as an adverse action).

As noted, the Plaintiff is in a protected class and alleges that her job performance was satisfactory.   In February of 2010, Nguyen issued the Plaintiff a verbal and written reprimand for rude behavior toward Salazar.  The verbal reprimand allegedly humiliated and embarrassed the Plaintiff and she complained to pathology department supervisor Nelson. In addition, the written reprimand stated that it was in effect for one year.  Such disciplinary measures qualify as actions that affect the terms and conditions of employment.  As to the fourth element, she alleges that Salazar is a similarly-situated individual outside her protected classes who also exhibited rude behavior in the workplace.   Brown alleges that Nguyen reprimanded her harshly, but did not reprimand Salazar at all.  Although Human Resources

manager Pendergrass stated that disciplinary action was eventually taken against Salazar, this only occurred after Brown complained that Nguyen had done nothing in response to Salazar's conduct. Accepting the Plaintiff's factual allegations as true, she has alleged a prima facie case of disparate treatment as to the terms and conditions of her employment based on race and gender. The Defendant's Motion will accordingly be denied as to Counts Two and Three.

Additionally, the Plaintiff asserts a claim for sex discrimination in Count Six. This claim is entirely duplicative of her claim for gender discrimination in Count Two. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Allowing both Counts Two and Six to proceed would unnecessarily complicate the issues to the Defendant's prejudice. *Preziosi v. United States*, No. RDB-11-2913, 2012 WL 2798771, at *5 n.5 (D. Md. July 9, 2012) (noting that courts routinely dismiss claims that only restate allegations from prior claims). Accordingly, Count Six is subject to dismissal.

### D. Harassment Claims

The Plaintiff also makes claims for harassment based on gender (Count Four) and race (Count Five). These harassment claims are based on Brown's allegations that Nguyen's and Salazar's conduct toward her created a hostile work environment. To establish a Title VII claim for sexual or racial harassment in the workplace, a plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex or race, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Ocheltree v Scollon Prods., Inc.*, 335 F.3d

325, 331 (4th Cir. 2003) (citations omitted); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001).

In this case, the Plaintiff's claims fail to allege facts that could plausibly establish the second and third elements of a hostile work environment claim. The Plaintiff alleges that Salazar called her "fucker." She contends that she understood this comment to refer to her as a promiscuous woman, showing that Salazar's comment was based on her gender. This argument is without merit. The term "fucker" is reasonably understood as a generic insult that has no gender connotation. Notably absent from the Plaintiff's allegations are propositions for sex or any mention of sexual activity. Her allegation that Salazar told her to "Shut up, shithead!" is similarly devoid of any element of gender. In addition, Nguyen's yelling that he hoped he did not make a mistake in hiring Brown has no gender connotation. Likewise, as to the claim for racial harassment, none of Nguyen's or Salazar's comments could be perceived as a racially-based insult. While Nguyen's and Salazar's alleged comments may have been rude, "harassment due to personality conflicts will not suffice" to support a hostile work environment claim. *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008).

Moreover, because of the isolated and sporadic nature of the Plaintiff's allegations, she has failed to plead plausibly that Nguyen's and Salazar's conduct was sufficiently severe and pervasive to alter the conditions of her employment. This third element of a hostile work environment claim has both subjective and objective components; a plaintiff must show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *EEOC v. Cent. Wholesalers*, 573 F.3d 167, 175 (4th Cir. 2011). When

assessing the third element of a hostile work environment claim, the Supreme Court has noted that "Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that the standard for hostile work environment claims "will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.") (citations and internal quotation marks omitted).  The allegations in the Plaintiff's Second Amended Complaint are precisely the type of sporadic use of abusive language that no reasonable employee would find to create an abusive or hostile environment in the workplace.  Similarly, the Plaintiff's one allegation of physically intimidating conduct—Salazar approaching her in an aggressive and violent manner, and pointing his finger in her face—is an isolated incident that is insufficiently severe or pervasive to be actionable.

Having concluded that Salazar's comments were not based on Brown's gender or race, and that the conduct alleged could not reasonably be perceived to create an abusive environment, it is unnecessary to consider the fourth element, whether Nguyen's or Salazar's conduct is imputable to the Hospital.  In sum, the Defendant's Motion will be granted as to the Plaintiff's claims for gender and racial harassment in Counts Four and Five, respectively.

## II.     Maryland Negligent Hiring, Supervision, and Retention Claim

In Count Seven, the Plaintiff asserts a Maryland common law claim for negligent hiring, supervision, and retention.  Such a claim may only be predicated on common law causes of action.  *Greenan v. Bd. of Educ. of Worcester Cnty.*, 783 F. Supp. 2d 782, 791 (D. Md. 2011).  As this Court has consistently held, because no common law tort of employment discrimination exists in Maryland, state-law negligent supervision claims may not be appended to Title VII

cases.  *Id.*; *Demby v. Preston Trucking Co.*, 961 F. Supp. 873, 881-82 (D. Md. 1997); *Bishop v. Bd. of Educ. of Calvert Cnty.*, No. DKC-11-1100, 2011 WL 2651246, at *11 (D. Md. July 5, 2011); *Brown v. Balt. Police Dep't*, No. RDB-11-0136, 2011 WL 6415366, at *15 (D. Md. Dec. 21, 2011).  Here, the Plaintiff's claims arise exclusively from statutorily prohibited employment-related conduct, and not any common law cause of action.[4]  Title VII provides the sole remedy for the alleged conduct.  Accordingly, the Defendant's Motion will be granted with respect to the Plaintiff's negligent hiring, supervision, and retention claim in Count Seven.

### III.    Family and Medical Leave Act Claims

The Plaintiff asserts claims for unlawful interference with medical leave (Count Eight), and retaliation (Count Nine) in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615.  In general, FMLA claims are subject to a two-year statute of limitations.  29 U.S.C. § 2617(c)(1).  A three-year statute of limitations applies for willful violations.  *Id.* § 2617(c)(2).  The FMLA does not define "willful," but courts have

---

[4] The Defendant also argues that that the negligent hiring, retention, and supervision claim is preempted by the Maryland Workers' Compensation Act.  The Plaintiff points out that the Court of Appeals of Maryland has held otherwise.  *Ruffin Hotel Corp. of Md. v. Gasper*, 17 A.3d 676, 689 (Md. 2011) ("We reject the proposition that the Workers' Compensation Commission is the exclusive forum in which a negligent hiring/retention claim must be litigated whenever such a claim is asserted by an employee against his or her employer as a result of intentional and unlawful misconduct of a fellow employee.").  This Court recognizes the tension between this decision of the Maryland's highest court and this Court's holdings that the MWCA "provides the exclusive remedy for employee injuries arising out of and in the course of employment."  *See Demby*, 961 F. Supp. At 881-882.  However, the case cited by the Plaintiff for this proposition is distinguishable in its analysis of Title VII's effect on the negligent hiring, retention, and supervision claim.  As noted by Chief Judge Chasanow of this Court in *Bishop v. Board of Education of Calvert County*, No. DKC-11-1100, 2011 WL 2651246, at *11 (D. Md. July 5, 2011), the holding of the Court of Appeals of Maryland in *Ruffin* was based on the existence of a common law assault and battery cause of action before the passing of Title VII's sexual harassment statute.  In this case, however, the Plaintiff's claims are exclusively founded on statutorily proscribed sexual and racial harassment with no "common law tort corollary."  *Bishop*, 2011 WL 2651246, at *11.  Therefore, *Ruffin* does not apply to the Plaintiff's claims in this case, and the negligent hiring, supervision, and retention claim is preempted by Title VII as noted above.

interpreted the term to mean that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Honeycutt v. Balt. Cnty., Md.*, No. JFM-06-0958, 2007 WL 1858691, at *3 (D. Md. June 18, 2007). The Plaintiff filed her original Complaint on September 9, 2013, more than two years after April 29, 2011, the latest alleged date on which the Hospital may have terminated her. Therefore, her action is barred unless she can adequately allege that the Hospital willfully violated the FMLA.

In this case, the Plaintiff was allowed leave when she requested it from February 8th to February 16, 2011. When she returned, the Hospital required her to complete standard forms, in compliance with the FMLA and the Health Insurance Portability and Accountability Act, to verify the medical reasons for her leave. *See* 29 C.F.R. §§ 825.305, 825.307, 825, 313(d). When the Plaintiff refused to sign the forms authorizing the release of her doctor's certification, she was not allowed to return to work. She was eventually discharged for her noncompliance with the required documentation process. Based on these alleged facts, the Plaintiff has not stated a plausible claim that the Hospital willfully interfered with the Plaintiff's rights under the FMLA. Indeed, she has only alleged that the Hospital allowed her to take the leave that she requested, and followed its standard protocol for an employee returning from FMLA leave. Because a willful violation has not been alleged, the two-year statute of limitations applies in this case, and the Plaintiff's claims pursuant to the FMLA are time-barred. It is thus unnecessary to further analyze the substance of the Plaintiff's allegations regarding violations of the FMLA. The Defendant's Motion will be granted as to the FMLA claims in Counts Eight and Nine.

## <u>CONCLUSION</u>

For the reasons stated above, the Defendant's Motion to Dismiss (ECF No. 15) is GRANTED IN PART AND DENIED IN PART.  Specifically, the Defendant's Motion is GRANTED as to Counts Four, Five, Six, Seven, Eight, and Nine.  The Defendant's Motion is DENIED as to the Plaintiff's Title VII claims in Count One for Retaliation, Count Two for Gender Discrimination, and Count Three for Racial Discrimination.

A separate Order follows.


Dated:  August 6, 2014                                _/s/_____

Richard D. Bennett
United States District Judge